ETTER, Appellee,

v.

TRAVELERS INSURANCE COMPANIES, Appellant.

[Cite as *Etter v. Travelers Ins. Cos.* (1995), 102 Ohio App.3d 325.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 94–CA–51.

Decided March 31, 1995.

*Weisbrod & Lopez Co., L.P.A.,* and *Jose M. Lopez,* for appellee.
*Bieser, Greer & Landis* and *Leo F. Krebs,* for appellant.

BROGAN, Judge.

Appellant Travelers Insurance Companies ("Travelers") appeals from the judgment of the Miami County Court of Common Pleas declaring that appellee Nathan W. Etter is entitled to recover under an uninsured motorist policy provided by Travelers because Etter was "occupying" the insured vehicle at the time he was injured.

The facts in this case are not in dispute. On January 10, 1993, Laura G. Etter permitted her grandson, Nathan W. Etter, to operate her 1984 Buick Regal automobile. As Nathan was traveling along Interstate 75, which had become slippery due to the cold and drizzly weather condition, the Buick slid off the paved portion of the road onto the median. The Buick came to a rest in the middle of the median strip, approximately twenty feet west of the highway.

Shortly after Nathan slid off the road, Trooper Richard Whitehead, a state highway patrolman, approached the Buick. Since Nathan was uninjured and the Buick was not damaged, Nathan and Trooper Whitehead crossed the highway and entered the state patrol vehicle. Trooper Whitehead called a tow truck and then instructed Nathan to return to the Buick to wait for its arrival.

Nathan crossed the highway and returned to the Buick. Approximately five to ten minutes later, Nathan noticed a Mazda automobile slide off the roadway and onto the median. The Mazda came to a stop approximately twenty to thirty feet behind the Buick. Nathan left the Buick and walked to the Mazda to check on its occupants. Approximately at the same time, Trooper Whitehead returned to the scene. As the occupants of the Mazda were uninjured, Trooper Whitehead asked Nathan to help him push the Mazda out of the median.

Nathan and Trooper Whitehead positioned themselves behind the Mazda and attempted to push it. After pushing unsuccessfully for approximately one

minute, a third vehicle—a Toyota Celica—also slid off of the road and into the median. As it was sliding, the Celica struck Nathan, causing serious physical injuries.

The Buick was covered by an insurance policy issued to Laura Etter by Travelers which was in full force and effect on the date of the accident. Because the driver of the Celica—Min Chun Ling—was an underinsured motorist, Nathan sought a declaratory judgment against Travelers declaring that Nathan was covered under the policy Travelers issued to Laura Etter, and thus was entitled to recover underinsured motorist benefits from Travelers.

For purposes of the action, the parties stipulated that Nathan was not a named insured under the policy and that the sole issue for the trial court's determination was whether Nathan was "occupying" the vehicle at the time of the accident. To assist the trial court, the parties agreed that the court should consider only the factual stipulations of the parties, the Travelers insurance policy, the depositions of Nathan Etter and Susan M. Roswell (the driver of the Mazda), and the Ohio Highway Patrol traffic crash report.

After considering the evidence and the briefs submitted by the parties, the trial court entered its findings of fact, conclusions of law, and declaration of rights. The trial court concluded that Nathan was "occupying" the Buick at the time of the accident and is therefore entitled to coverage under the insurance policy. On September 26, 1994, the trial court entered final judgment in favor of Nathan. Travelers then filed this timely appeal.

On appeal, Travelers raises four assignments of error. The foundation of each assignment of error is the trial court's finding that Nathan was "occupying" the Buick at the time of the accident. Due to their substantial similarity and in the interest of judicial economy, the assignments of error will be considered together.

Nathan sought coverage under the following provision of the insurance policy issued by Travelers:

"We will pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, operation, maintenance or use of the 'uninsured motor vehicle.' We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

The policy defines "insured" as the named insured, any family member residing with the named insured, and any other person "occupying" the covered automobile. The policy further states that the term "occupying" means "in, upon, getting in, on, out or off." As Nathan is not the named insured under the policy,

nor a family member residing with the named insured, Nathan is only covered by the policy if he was "occupying" the Buick at the time of the accident.

At the outset, we note that where language in an insurance contract is reasonably susceptible of more than one meaning, it should be liberally construed in favor of the insured and against the insurer. *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 68 O.O.2d 56, 313 N.E.2d 844. Further, the Ohio Supreme Court has stated that the word "occupying" should not be given an unduly narrow definition, but, rather, should be given a liberal interpretation. *Kish v. Cent. Natl. Ins. Group* (1981), 67 Ohio St.2d 41, 21 O.O.3d 26, 424 N.E.2d 288.

Ohio courts have repeatedly faced the task of interpreting the term "occupying" for purposes of insurance coverage. See *Robson v. Lightning Rod Mut. Ins. Co.* (1978), 59 Ohio App.2d 261, 13 O.O.3d 268, 393 N.E.2d 1053; *Halterman v. Motorists Mut. Ins. Co.* (1981), 3 Ohio App.3d 1, 3 OBR 1, 443 N.E.2d 189. A review of those cases reveals that "determining whether a person is 'occupying' a vehicle is not as easy as it might appear at first blush." *Robson, supra*, at 263, 13 O.O.3d at 269, 393 N.E.2d at 1054. Although the term "occupying" as defined in the insurance contract may not seem ambiguous on its face, it often becomes ambiguous when determining whether insurance coverage should be extended in certain factual circumstances. *Id.*

The Ohio Supreme Court first addressed the issue of interpreting the term "occupying" in insurance contracts in *Kish v. Cent. Natl. Ins. Group, supra*, 67 Ohio St.2d 41, 21 O.O.3d 26, 424 N.E.2d 288. The *Kish* court held that, even under a liberal construction of the term, the claimant, who was attempting to return to his vehicle to escape an assault, was not occupying the vehicle. *Id.* The court simply reasoned that attempting to return to a vehicle for the sole purpose of avoiding an attacker was not a task related to the operation of the vehicle. *Id.* The facts of *Kish* are clearly distinguishable from those of the present case.

The Ohio Supreme Court again addressed the issue of how to interpret the term "occupying" in *Joins v. Bonner* (1986), 28 Ohio St.3d 398, 28 OBR 455, 504 N.E.2d 61. In *Joins*, a child exited an insured vehicle and began to cross the street in order to reach his babysitter's house. Before he reached the curb, the child was struck by an uninsured vehicle. The Ohio Supreme Court held that the child was occupying the vehicle for purposes of insurance coverage because he was "alighting from" the vehicle.[1] The court reasoned that "a person is not

---

1. The insurance contract at issue in *Joins v. Bonner* defined "occupying" as "in or upon or entering into or alighting from." 28 Ohio St.3d at 399, 28 OBR at 456, 504 N.E.2d at 62. Although the language in the insurance policy issued by Travelers in the present case does not

'finished' with exiting a vehicle until he or she reaches a place of safety on the side of the street or road to which he is proceeding." *Id.* at 400, 28 OBR at 457, 504 N.E.2d at 63.

Because of the particular facts of the case, the court's reasoning in *Joins* focused mainly on the specific language of "alighting from" in the contractual definition of "occupying." However, the court also adopted a universal standard for determining whether a person is "occupying" a vehicle:

"In construing uninsured motorist provisions of automobile insurance policies which provide coverage to persons 'occupying' insured vehicles, the determination of whether a vehicle was occupied by the claimant at the time of an accident should take into account the immediate relationship the claimant had to the vehicle, within a reasonable geographic area." *Id.* at 401, 28 OBR at 457, 504 N.E.2d at 63–64, citing *Robson, supra.*

Courts have subsequently utilized the *Joins* analysis to determine whether a claimant is "occupying" a vehicle.

■ Pursuant to *Joins*, a claimant must have an immediate relationship to the vehicle to be occupying the vehicle. Appellate courts have developed guidelines for determining whether a sufficient relationship between the claimant and the vehicle exists. First, the claimant's performance of a task related to the operation of an insured vehicle provides a sufficient basis for his relationship to the vehicle. See, *e.g., Halterman, supra,* 3 Ohio App.3d 1, 3 OBR 1, 443 N.E.2d 189 (siphoning gas into vehicle was sufficient to support a relationship with vehicle even where claimant was never a passenger in the vehicle); *Morris v. Continental Ins. Cos., supra,* 71 Ohio App.3d 581, 594 N.E.2d 1106. Additionally, a sufficient relationship to the vehicle also exists if the claimant's conduct is "foreseeably identifiable" with the normal use of the vehicle. *Id.; Yoerger v. Gen. Acc. Ins. Co. of Am.* (1994), 98 Ohio App.3d 505, 648 N.E.2d 919 (working on highway pavement near work vehicle sufficient to support a relationship with the vehicle). Foreseeably identifiable conduct includes "[p]erformance of activities related to the claimant's prior presence in the insured vehicle." *Morris, supra,* 71 Ohio App.3d at 587, 594 N.E.2d at 1110.

Finally, some appellate courts also apply the "vehicle-oriented" test to determine if a sufficient relationship exists between the claimant and the vehicle. See *Halterman, supra; State Farm Mut. Auto. Ins. Co. v. Cincinnati Ins. Co.* (June

---

use the exact language "alighting from," it does contain the language "getting in, on, out, or off." Other courts have applied the analysis in *Joins* to cases regarding insurance contracts containing language identical to that in the present case. See, *e.g., Morris v. Continental Ins. Cos.* (1991), 71 Ohio App.3d 581, 594 N.E.2d 1106; *McCallum v. Am. States Ins. Co.* (Nov. 15, 1991), Lucas App. No. L–90–354, unreported, 1991 WL 254150.

17, 1993), Cuyahoga App. No. 62930, unreported; *Auto–Owners Ins. Co. v. Phillips* (June 16, 1989), Lucas App. No. L–88–271, unreported, 1989 WL 65097. The origin of the "vehicle-oriented" test is the New York case of *Allstate Ins. Co. v. Flaumenbaum* (1970), 62 Misc.2d 32, 308 N.Y.S.2d 447, wherein the New York court held that "a person has not ceased 'occupying' a vehicle until he has severed his connection with it—*i.e.,* when he is on his own without any reference to it." *Id.* at 46, 308 N.Y.S.2d at 462. Thus, where a claimant is still "vehicle-oriented" as opposed to "highway-oriented" or "sidewalk-oriented," he has a sufficient relationship to the vehicle to support a finding that he is occupying the vehicle.

Using the above standards, Ohio courts have been confronted with a wide variety of factual situations requiring a determination of whether a particular claimant is an occupant of the insured vehicle. See, *e.g., Robson, supra,* 59 Ohio App.2d 261, 13 O.O.3d 268, 393 N.E.2d 1053 (claimant held occupying vehicle when he was placing stereo into trunk of vehicle); *Halterman, supra,* 3 Ohio App.3d 1, 3 OBR 1, 443 N.E.2d 189 (claimant was occupying vehicle when he was siphoning gas into the gas tank even though he had never been inside vehicle); *Cincinnati Ins. Co., supra* (claimant was occupying vehicle when he was one hundred feet away from his vehicle picking up bottles that had fallen from his vehicle); *Phillips, supra* (claimant was not occupying vehicle when struck while crossing street to reach the parking lot where his vehicle was parked); *State Farm Mut. Auto. Ins. Co. v. Counts* (Nov. 7, 1990), Summit App. Nos. 14490, 14492, unreported, 1990 WL 177476 (claimant was occupying vehicle when underneath vehicle working on brakes).

It is apparent from review of the above cases that the outcome of each case is highly fact sensitive. Clearly, the general trend appears to be a liberal construction of the term "occupying." The parties did not cite any case with facts directly analogous to those in the present case, nor have we found any. Although the facts are obviously not directly on point, an appellate court was faced with a somewhat similar factual situation in *McCallum v. Am. States Ins. Co.* (Nov. 15, 1991), Lucas App. No. L–90–354, unreported, 1991 WL 254150, wherein a truck driver stopped to help another truck driver who had wrecked his vehicle. While the claimant was setting flares to warn other drivers of the hazard, he was struck by an uninsured motorist. The court held that he was occupying the truck he had been driving since he was a short distance from the truck when he was hit and because helping another driver by setting flares is reasonably anticipated conduct related to the use of the vehicle.

■ We now turn to the facts of the present case to determine whether Nathan was occupying the Buick at the time he was injured. Under the *Joins* analysis, Nathan must have been within a reasonable proximity to the Buick and must have had a sufficient relationship to the Buick at the time he was struck.

First, we find that Nathan was injured within a reasonable geographic proximity of the insured vehicle. The evidence reveals that he was injured approximately twenty to thirty feet away from his vehicle. Other courts have found that much greater distances are still within a reasonable geographic proximity. See, *e.g.*, *Cincinnati Ins. Co., supra.* Thus, we find no error in the trial court's finding that Nathan was within a reasonable geographic proximity to his vehicle.

Travelers argues that because Nathan was helping another motorist at the time he was struck, there was not a sufficient relationship between him and the Buick. However, we find that under the specific facts of this case, Nathan did have a sufficient relationship to the vehicle. Pursuant to *McCallum, supra*, helping another driver is foreseeably identifiable with the normal use of a vehicle in certain situations. For the reasons set forth below, we find that Nathan's conduct of helping push the Mazda was foreseeably identifiable with the normal use of the vehicle under the specific facts of this case.

First, Nathan was waiting for a tow truck to arrive at the time of his injury. Unarguably, waiting for a tow truck is conduct "foreseeably identifiable" with the normal use of a vehicle. The fact that Nathan was helping another stranded motorist, in close proximity to his vehicle, while waiting for the tow truck does not transform the "foreseeably identifiable" conduct into conduct which is unrelated to the vehicle. Nathan would not have been in a position to help the stranded motorist if the Buick had not slid off the road and forced him to wait for a tow truck to arrive.

Further, Nathan was simply following the directions of the highway trooper when he was struck. The trooper first instructed Nathan to wait for the tow truck in his car. Subsequent to the Mazda sliding off the road, the trooper asked Nathan to help him push the Mazda back onto the roadway. We find that following the directions of a highway trooper while waiting for a tow truck to arrive is foreseeably identifiable with the normal use of a vehicle.

We also note that under application of the vehicle-oriented test, which we find to be a sensible approach to interpreting the term "occupying," Nathan had a sufficient relationship to the Buick. As Nathan was still in the process of waiting for a tow truck to arrive in order to tow the Buick at the time he was struck, he had not severed his connection with the Buick, nor was he on his own without any reference to the Buick.

Finally, the fact that Nathan did not leave the median while waiting for the tow truck also supports the trial court's finding that he was occupying the vehicle. Undeniably, the highway median is not a place of safety, particularly on an icy day. Thus, after exiting his vehicle, Nathan had not yet reached a place of safety when he was struck.

With the principle that insurance contracts should be interpreted in favor of the insured where ambiguity exists firmly in mind, we find that the trial court did not err in finding that Nathan was "occupying" the Buick for purposes of insurance coverage. In so holding, we note that any one of the above facts taken in isolation may not have been sufficient to support the trial court's finding. However, the combination of all of the factual circumstances that exist in the present case amply supports the trial court's finding that Nathan was occupying the Buick. The assignments of error are overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FAIN and WOLFF, JJ., concur.