AKINS, Appellant and Cross–Appellee,

v.

HARCO INSURANCE COMPANY et al., Appellee;
Owners Insurance Company, Cross–Appellant.

[Cite as *Akins v. Harco Ins. Co.*, 158 Ohio App.3d 292, 2004-Ohio-4267.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–03–1279.

Decided Aug. 13, 2004.

David P. Miraldi, for appellant and cross-appellee.

Susan Healy Zitterman and Patrick B. Cavanaugh, for appellee Harco National Insurance Company.

Erin Stottlemyer Gold and Michael F. Schmitz, for appellee Old Republic Insurance Company.

Cormac B. DeLaney, for cross-appellant Owners Insurance Company.

HANDWORK, Presiding Judge.

{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas. The following undisputed facts are relevant to our disposition of this cause.

{¶ 2} On the evening of May 2, 2001, the decedent, Jared Akins, an employee of Simplified Employment Services, was operating a tractor-trailer leased by JMC Logistics ("JMC") from Penske Truck Leasing ("Penske"). As Akins approached the exit ramp for southbound I–475, his vehicle ran out of fuel. He therefore pulled over to the right side of the road in an area near another ramp that leads from U.S. 24 to southbound I–475 and then called Hammer's Towing, Inc. ("Hammer's") for assistance.

{¶ 3} When Hammer's service van arrived, the driver, Ernie Nolan, parked approximately five feet in front of the tractor-trailer. After Nolan put fuel in the

tractor-trailer, he returned to his van to complete an invoice for the service. There was only one seat, the driver's seat, in the service van. Nolan used a pull-down table in the van for the purpose of preparing the invoice. As Nolan was working on the invoice, Akins came over to the passenger side of the van and stood next to it with one hand on each side of the open sliding door frame and told Nolan his vehicle's license plate number. At that point, an underinsured tortfeasor, Karl Eickmann, who was inebriated, drove his vehicle across the area between the U.S. 24 ramp and the I-475 southbound ramp and struck the service van and Akins. As a result of the injuries he received in the collision, Akins died.

{¶ 4} Eickmann had a motor vehicle liability insurance policy with a limit of only $12,500. Therefore, Garnett Giangicomo, the former administrator of Jared Akins's estate, instituted the instant declaratory judgment action seeking under-insured motorist coverage pursuant to the commercial motor vehicle policies issued to JMC, Penske, and Hammer's. Later, Giangicomo resigned her position as administrator and was succeeded by appellant and cross-appellee, Ellen Akins, the decedent's mother.

{¶ 5} During the relevant period, JMC was insured by appellee Harco National Insurance Company ("Harco"), Penske carried insurance provided by appellee Old Republic Insurance Company ("Old Republic"), and Hammer's was insured by cross-appellant, Owners Insurance Company ("Owners"). All three insurance companies filed motions for summary judgment. Appellant also filed cross-motions for summary judgment in each instance. The trial judge granted the summary judgment motions of Harco and Old Republic and denied appellant's cross-motions for summary judgment. Nevertheless, the judge ruled in favor of appellant on the motion for summary judgment filed against Owners and denied Owners' motion for summary judgment. The trial court later entered a decision that included the language found in Civ.R. 54(B), and this appeal followed. Appellant claims that the following errors occurred in the proceedings below:

{¶ 6} "1. The trial court erred as a matter of law when it ruled that the Old Republic Insurance Company policy did not provide underinsured motorist coverage for the wrongful death claim of Jared Akins, and granted the motion for summary judgment of appellee, Old Republic Insurance Company, and denied appellant's motion for summary judgment against Old Republic Insurance Company.

{¶ 7} "2. The trial court erred as a matter of law when it ruled that the Harco National Insurance Company policy did not provide underinsured motorist coverage for the wrongful death claim of Jared Akins, and granted the motion for summary judgment of appellee, Harco National Insurance Company, and denied appellant's motion for summary judgment against Old Republic Insurance Company."

{¶ 8} Owners raises the following cross-assignments of error:

{¶ 9} "The trial court erred to the prejudice of Owners Insurance Company by granting Plaintiff's motion for summary judgment.

{¶ 10} "The trial court erred to the prejudice of Owners Insurance Company by denying Owners Insurance Company's motion for summary judgment."

{¶ 11} Our review of the trial court's decisions to grant summary judgment is de novo. See *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See, also, *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 12} We will consider appellant's second assignment of error, which relates to Harco, first. In that second assignment of error, appellant contends that the trial court erred in granting summary judgment to Harco. Specifically, appellant asserts that the trial court erred as a matter of law in determining that Michigan law, rather than Ohio law, was applicable in determining whether the decedent was afforded underinsured motorist coverage under the Harco policy.

{¶ 13} The law governing our resolution of the choice-of-law question raised by appellant is found in *Ohayon v. Safeco Ins. Co.* (2001), 91 Ohio St.3d 474, 747 N.E.2d 206. In *Ohayon,* the Ohio Supreme Court held, at paragraph two of the syllabus, "Questions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions shall be determined by the law of the state selected by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971)."

{¶ 14} Thus, in the absence of an effective choice of law in an insurance contract, a court must resolve the choice-of-law issue by examining the factors found in Section 188 of the Restatement in order to decide which state has "the most significant relationship to the transaction and the parties." Id. at 477, 747 N.E.2d 206, citing the Restatement at 575, Section 188(1). The *Ohayon* court found that this focus comported with the Restatement's "view that the rights created by an insurance contract should be determined 'by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and

the parties.'" Id. at 479, 747 N.E.2d 206, quoting the Restatement at 610, Section 193.

{¶ 15} The factors used to determine the most significant relationship are "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." Id. These factors are "keyed to the justifiable expectations of the parties to the contract, not to the ultimate benefit of one party over another." Id., citing the Restatement at 15, Section 6, Comment *g*.

{¶ 16} In the present case, the following facts are undisputed. JMC is a Michigan corporation with its principal place of business located in Grand Rapids, Michigan. JMC obtained its commercial motor vehicle liability policy through an insurance agent who was also located in Grand Rapids, Michigan. Thus, the contract was negotiated in the state of Michigan. In JMC's application for insurance coverage, it stated that it had 57 vehicles that were garaged in Grand Rapids, Michigan. There was no mention of the fact that 12 of its drivers, including the decedent, had routes out of Bellevue, Ohio, or that 12 of the 57 vehicles were usually garaged in Ohio. Consequently, Harco offered JMC uninsured and underinsured motorist coverage pursuant to Michigan law, but it did not offer such coverage pursuant to Ohio law.

{¶ 17} The place of performance of the contract was, in a large part, in the state of Michigan; however, in this particular case, it was in the state of Ohio. While it is undisputed that the tractor-trailer that Akins was operating at the time of the accident was garaged in Ohio, it is also undisputed that this vehicle was owned by Penske and was registered and licensed in the state of Michigan. Based on the foregoing, we find that reasonable minds could only conclude that the most significant relationship to the transaction and the parties is the state of Michigan.

{¶ 18} Appellant argues, however, that *Henderson v. Lincoln Natl. Specialty Ins. Co.* (1994), 68 Ohio St.3d 303, 626 N.E.2d 657, requires that Ohio law be applied. The *Henderson* court, without setting forth any factual basis, answered the following certified question in the affirmative:

{¶ 19} " 'Does Ohio Revised Code § 3937.18 apply to an automobile liability or motor vehicle liability policy of insurance covering vehicles *registered* and principally garaged in Ohio, when said policy was not delivered, or issued for delivery in Ohio by the insurer?' " (Emphasis added.)

{¶ 20} As noted above, the tractor-trailer operated by the decedent was never registered in the state of Ohio. For this reason alone, *Henderson* is distinguishable and is, therefore, inapplicable to the present case. Accord *Detillion v. State*

*Farm Mut. Auto. Ins. Co.*, 4th Dist. No. 03CA2729, 2004-Ohio-949, 2004 WL 376931, at ¶ 20 and ¶ 21. Moreover, we agree with the trial court in finding that the fact that the location where the insured vehicle is principally garaged would, in the case under consideration, be but one factor in determining a choice-of-law question.

{¶ 21} Appellant also urges that our decisions in *Garcia v. Green*, 6th Dist. No. L–02–1351, 2003-Ohio-3841, 2003 WL 21674971, and *Woodward v. Continental Ins. Co.*, 6th Dist. No. H–02–043, 2003-Ohio-3838, 2003 WL 21675826, support the contention that Ohio law should apply in determining whether underinsured motorist coverage is available under the Harco policy. Again, these cases are distinguishable because their outcome rested, in significant part, on the additional fact that UM/UIM coverage was offered to the corporations involved in each case. *Garcia v. Green*, at ¶ 24; *Woodward v. Continental Ins. Co.*, at ¶ 15. Here, there was no offer or rejection of Ohio UM/UIM coverage because JMC informed Harco that its vehicles were all garaged in the state of Michigan. Therefore, the trial court correctly determined that Michigan had the most significant relationship to the transaction and to the parties and, therefore, did not err in granting summary judgment to Harco as a matter of law. Accordingly, appellant's second assignment of error is found not well taken.

{¶ 22} Appellant's first assignment of error challenges the trial court's grant of summary judgment to Old Republic on the basis that the insurance company's offer of UM/UIM motorist coverage satisfied the requirements of *Linko v. Indemn. Ins. Co.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338. Appellant insists that the trial court erred in allowing extrinsic evidence to show compliance. In reaching her decision in this case, the trial judge did consider extrinsic evidence in the form of the affidavit of George Frazier, the Vice–President of Insurance and Risk Management for Penske. In the affidavit, Frazier avowed that he was apprised of the premium cost for UM/UIM coverage "either orally or in writing."

{¶ 23} In *Linko*, the Ohio Supreme Court held that a valid rejection of UM/UIM coverage must be in writing and that it therefore requires a meaningful written offer of such coverage. Id., 90 Ohio St.3d at 449, 739 N.E.2d 338. The court then set forth the following requirements of a meaningful written offer: (1) a brief description of the coverage, (2) the premium, and (3) an express statement of the UM/UIM coverage limits. Id. In addition, the *Linko* court held that the validity of the rejection of a written offer must be determined from the four corners of the insurance agreement. Id. at 450, 739 N.E.2d 338.

{¶ 24} In 1997, and as applicable to the case before us, the General Assembly enacted H.B. No. 261, which amended R.C. 3937.18(C). 147 Ohio Laws, Part II, 2373. This statutory section provided that a written rejection is binding and

effective when it is executed and creates a presumption that an offer of UM/UIM coverage was made by the insurer. A consequence of this legislation was to create some doubt as to whether the *Linko* requirements were still valid after the statute's effective date. See *Hartfield v. Toys "R" Us*, 6th Dist. Nos. L–02–1218 and L–02–1228, 2003-Ohio-2905, 2003 WL 21299928, at ¶ 15, reversed on other grounds, *In re Uninsured & Underinsured Motorist Coverage Cases*, 100 Ohio St.3d 302, 2003-Ohio-5888, 798 N.E.2d 1077.

{¶ 25} Subsequently, the Ohio Supreme Court, in answering two questions certified by the United States District Court for the Northern District of Ohio, Western Division, held that the *Linko* requirements were still applicable to an insurance policy entered into after the effective date of H.B. 261 and before the effective date, October 31, 2001, of 2001 S.B. No. 97, which eliminated any mandatory offer of UM/UIM coverage. *Kemper v. Michigan Millers Mut. Ins. Co.*, 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196. Ohio's high court also answered the following second question in the negative: "If the *Linko* requirements are applicable, does, under H.B. 261, a signed rejection act as an effective declination of UM/UIM coverage where there is no other evidence, oral or documentary, of an offer of coverage?" Id.

{¶ 26} As a result of the Ohio Supreme Court's answer to the second certified question in *Kemper*, there has been some confusion among appellate courts on the issue of whether a court is limited to examining the four corners of the insurance policy when determining compliance with *Linko*. See, e.g., *Manalo v. Lumberman's Mut. Cas. Co.*, 2nd Dist. No. 19391, 2003-Ohio-613, 2003 WL 264344 (allowing extrinsic evidence, an affidavit, to demonstrate that a valid offer of UM/UIM coverage was made); *McNeeley v. Pacific Employers Ins. Co.*, 10th Dist. No. 02AP–1217, 2003-Ohio-2951, 2003 WL 21321469 (finding that *Kemper* did not alter the holding in *Linko* and, therefore, the affidavit of a claims manager was irrelevant in determining the validity of an offer of UM/UIM coverage).

{¶ 27} Although this court has intimated that extrinsic evidence may be used to establish a valid offer, we have not directly addressed this issue. See *Stubbins v. Nationwide Agribusiness Ins. Co.*, 6th Dist. No. F–02–031, 2003-Ohio-3456, 2003 WL 21500198, reversed on other grounds, *In re Uninsured & Underinsured Motorist Coverage Cases*, 100 Ohio St.3d 302, 2003-Ohio-5888, 798 N.E.2d 1077; *Hartfield v. Toys "R" Us*, 2003-Ohio-2905, 2003 WL 21299928, at ¶ 25, fn. 4; *Raymond v. Sentry* (Mar. 8, 2002), 6th Dist. No. L–01–1357, 2002 WL 360736 (decided before *Kemper*).

{¶ 28} In directly considering the question of extrinsic evidence, we first note that the Second Appellate District overruled its holding in *Manalo*. See *Hollon v. Clary*, 155 Ohio App.3d 195, 2003-Ohio-5734, 800 N.E.2d 68, at ¶ 16, discretion-

ary appeal allowed, 101 Ohio St.3d 1487, 805 N.E.2d 538. The *Hollon* court held that the Ohio Supreme Court's answer to a question drafted by a federal court could in no way undercut the *Linko* requirement that "the premium for insurance must be stated in a written offer." Id. Accord *Johnson v. Liberty Mut. Ins. Co.* 10th Dist. No. 03AP–674, 2004-Ohio-1979, 2004 WL 835875, at ¶ 26; *McNeeley v. Pacific Employers Ins. Co.*, 10th Dist. No. 02AP–1217, 2003-Ohio-2951, at ¶ 15; *Kalista v. Pacific Emp. Ins., Co.*, 8th Dist. No. 82286, 2003-Ohio-3031, 2003 WL 21436169, at ¶ 33.

{¶ 29} Our research fails to reveal any Ohio appellate cases that find that *Kemper* stands for the proposition that any evidence extrinsic to the insurance agreement may be used to decide whether the requirements of *Linko* are met. We therefore conclude that the mandate set forth in *Linko* is not abrogated by the Ohio Supreme Court's answer to the second question posed in *Kemper*, and the trial court erred in considering evidence extrinsic to the insurance agreement itself. If this evidence is not considered, there is no statement of the premium for UM/UIM coverage in the Ohio endorsement to the Old Republic insurance policy. Thus, the requirements found in *Linko* are not satisfied, and UM/UIM coverage was afforded to the decedent by operation of law. For this reason, the trial court erred in granting summary judgment to Old Republic on this issue and denying appellant's motion for summary judgment on the estate's claim against Old Republic. Accordingly, appellant's first assignment of error is found well taken.

{¶ 30} Because they are inextricably intertwined, Owners' first and second cross-assignments of error shall be considered together. In those cross-assignments of error, Owners claims that the trial court erred in finding that Akins was entitled to underinsured motorist coverage pursuant to the following provisions in the "Ohio Underinsured Motorist Coverage Automobile Policy" that Owners issued to Hammer's:

{¶ 31} "**Coverage**

{¶ 32}"a. **We** will pay compensatory damages an injured person is legally entitled to recover:

{¶ 33} "(1) from the owner or operator of an **underinsured automobile;**

{¶ 34} "(2) for **bodily injury** sustained while occupying or getting into or out of an **automobile** that is covered by **Section II–Liability Coverage** of the policy.

{¶ 35} "b. If the first named person in the Declarations is an individual, this coverage is extended as follows:

{¶ 36} "(1) **We** will pay compensatory damages **you** are legally entitled to recover:

{¶ 37} "(a) from the owner or operator of an **uninsured automobile**;

{¶ 38} "(b) for **bodily injury you** sustain;

{¶ 39} "1.   when you are a **pedestrian**; or

{¶ 40} "2.   while **occupying** an **automobile you** do not own which is not covered by Section II–LIABILITY COVERAGE OF THE POLICY."

{¶ 41} Owners first asserts that the decedent did not have underinsured motorist coverage pursuant to section b of the foregoing provisions because he was not a named insured in the declarations.   We agree.   The issue before us, however, is whether the decedent, as an injured person, had underinsured motorist coverage under section a.   We concur with the trial court in finding that the disposition of this issue turns upon the meaning of the word "occupying."

{¶ 42} Owners maintains that the meaning of "occupying" is plain and unambiguous and requires a finding that Akins was, at some point, inside Hammer's service van.   Because the decedent was never inside the van, Owners asks this court to conclude that he was never occupying that vehicle.

{¶ 43} "Occupying" is not defined in the Owners insurance policy.   Finding that this word is ambiguous in this particular context, the common pleas court looked to the pertinent case law in determining the legal definition of "occupying."

{¶ 44} Insurance contracts are construed in accordance with the same rules as other written contracts.   *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096.   Thus, a court's goal when construing an insurance policy is to ascertain the intent of the parties.   *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519.

{¶ 45} "[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."   *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 374 N.E.2d 146.   Where, however, the provisions of a contract of insurance "are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured."   *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.   Under these circumstances, any reasonable construction which results in coverage of the insured must be adopted by the trial court.   *Sterling Merchandise Co. v. Hartford Ins. Co.* (1986), 30 Ohio App.3d 131, 137, 30 OBR 249, 506 N.E.2d 1192.

{¶ 46} Although the term "occupying an automobile" may appear unambiguous at first blush, it may, depending on the factual circumstances of a case, be extended.   *Etter v. Travelers Ins. Cos.* (1995), 102 Ohio App.3d 325, 328, 657

N.E.2d 298, quoting *Robson v. Lightning Rod Mut. Ins. Co.* (1978), 59 Ohio App.2d 261, 263, 13 O.O.3d 268, 393 N.E.2d 1053. Consequently, the general trend followed by Ohio appellate courts is to construe the word "occupying" liberally. Id. at 330, 657 N.E.2d 298. In doing so, these courts have adopted a number of related tests.

{¶ 47} In *Joins v. Bonner* (1986), 28 Ohio St.3d 398, 401, 28 OBR 455, 504 N.E.2d 61, the Ohio Supreme Court held that in construing UM/UIM provisions in a motor vehicle policy that grants coverage to a person "occupying" an insured vehicle at the time of an accident, a court "should take into account the immediate relationship the claimant had to the vehicle, within a reasonable geographic area." Further, the performance of a task related to the operation of an insured vehicle provides a sufficient basis for the injured party's relationship to the vehicle for the purpose of defining "occupying," even when that claimant has no other connection to that vehicle. *Morris v. Continental Ins. Cos.* (1991), 71 Ohio App.3d 581, 587, 594 N.E.2d 1106; *Renter v. Anthony*, 8th Dist. No. 81233, 2003-Ohio-431, 2003 WL 194875, at ¶ 51. In addition, if the injured party's "conduct is foreseeably identifiable with the normal use of the vehicle, that also constitutes a sufficient relationship to the insured vehicle, for the purposes of determining coverage." *Yoerger v. Gen. Acc. Ins. Co. of Am.* (1994), 98 Ohio App.3d 505, 507, 648 N.E.2d 919, citing *Morris v. Continental Ins. Cos.*, 71 Ohio App.3d at 587, 594 N.E.2d 1106.

{¶ 48} Akins was in the immediate geographical area of Hammer's service van at the time of the accident. At that time, the decedent was engaged in the performance of a task related to Hammer's service van by aiding in the completion of a service invoice. Moreover, Akins's conduct was "foreseeably identifiable with the normal use" of the service van. For these reasons, we conclude, as did the trial court, that the decedent had the requisite relationship with the insured motor vehicle to satisfy the meaning of "occupying" and was, therefore, entitled to underinsured motorist coverage under the Owners insurance policy. Accordingly, the common pleas court did not err in granting summary judgment to appellant and cross-appellee on its claim against Owners, and in denying Owners' motion for summary judgment. Owners' first and second cross-assignments of error are, therefore, found not well taken.

{¶ 49} The judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. The parties are ordered to pay the costs of this appeal in equal shares. See App.R. 24.

Judgment affirmed in part<br>and reversed in part.

KNEPPER, J., concurs.

LANZINGER, J., concurs in part and dissents in part.

LANZINGER, Judge, concurring in part and dissenting in part.

{¶ 50} While I concur with the majority on the appellant's first and second assignments of error, I respectfully dissent on the two cross-assignments of error and would reverse the trial court's decisions on both summary judgments.

{¶ 51} The Owners insurance policy states: "**We** will pay compensatory damages an injured person is legally entitled to recover * * * (2) for **bodily injury** sustained while *occupying or getting into or out of* an **automobile** that is covered * * *." (Boldface sic; italics added). The majority finds that this provision is susceptible of "more than one interpretation" and then finds it "reasonable" to say that Akins, by standing with his hands on the van door and telling the service driver his license plate number, was "occupying" the van and thus was covered by its underinsured motorist coverage. Coverage in circumstances such as these certainly could not have been the intent of the parties; otherwise, any customer who happened to touch the van in responding to the driver's questions would be covered by the van's insurance policy, since the customer would have been "occupying" the van.

{¶ 52} The facts of this accident should not create an ambiguity in a plainly written policy. Someone is to be "occupying, getting into or out of" the insured vehicle. The term is to have its ordinary meaning. In construing the word "occupying" liberally under the facts of this case, the majority considered Akins's proximity to the service van (he was geographically close to it) and his performance of a task related to the van's use (he was answering questions posed by the driver), and then found that his conduct was foreseeably identified with the van's normal use. But it missed an important first step: the claimant's actual relationship with the insured vehicle. Akins was not "occupying" the insured van because he never was its owner, its driver, or its passenger.

{¶ 53} Appellate cases that broaden the undefined contract term "occupying" to grant coverage to a claimant have, at least, required a fundamental relationship between injured party and insured vehicle: the injured party was the driver or passenger. See, e.g., *Etter v. Travelers Ins. Cos.* (1995), 102 Ohio App.3d 325, 657 N.E.2d 298 (driver injured pushing another vehicle while waiting for tow truck for insured vehicle); *Joins v. Bonner* (1986), 28 Ohio St.3d 398, 28 OBR 455, 504 N.E.2d 61 (child passenger leaving an insured vehicle, beginning to cross the street); *Robson v. Lightning Rod Mut. Ins. Co.* (1978), 59 Ohio App.2d 261, 13 O.O.3d 268, 393 N.E.2d 1053 (passenger placing stereo into trunk of insured vehicle); *Morris v. Continental Ins. Cos.* (1991), 71 Ohio App.3d 581, 594 N.E.2d 1106 (assigned driver, then passenger of an insured tractor-trailer injured while standing on highway after an accident); *Yoerger v. Gen. Acc. Ins. Co. of Am.* (1994), 98 Ohio App.3d 505, 648 N.E.2d 919 (driver working on highway pavement near insured work vehicle); *State Farm Mut. Auto. Ins. Co. v. Cincinnati Ins.*

*Co.* (June 17, 1993), 8th Dist. No. 62930, 1993 WL 215450 (passenger 100 feet away from insured vehicle picking up fallen bottles to return them to the insured vehicle); *State Farm Mut. Auto. Ins. Co. v. Counts* (Nov. 7, 1990), 9th Dist. Nos. 14490, 14492, 1990 WL 177476 (driver underneath insured vehicle working on brakes).

{¶ 54} We have faced a similar situation before. In *McCallum v. Am. States Ins. Co.* (Nov. 15, 1991), 6th Dist. No. L–90–354, 1991 WL 254150, a truck driver stopped to help another trucker who had wrecked his vehicle. While the driver of the insured truck was setting flares to warn other drivers of the hazard, he was struck by an uninsured motorist. We held that he was occupying the truck *he had been driving,* since he was a short distance away when hit, and that helping another driver by setting flares was reasonably anticipated conduct related to the use of the vehicle. Thus the same rules that the majority used in this case applied with an important distinction—McCallum was the driver of the insured truck from which he was claiming coverage.

{¶ 55} Akins did have underinsured motorist coverage under the Old Republic policy that insured the leased vehicle he had been driving. On the other hand, even under an expansive reading of the Owners policy, Akins was not "occupying" the service van. He neither owned the service van nor was ever inside it as a passenger or driver. For these reasons, I respectfully dissent and would reverse the trial court's judgment on both assignments of the cross-appellant.