DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a summary judgment issued by the Lucas County Court of Common Pleas to one insurer against another in a dispute over uninsured/underinsured ("UM/UIM") motorist coverage. Because we conclude that the trial court properly found appellant insurer primarily liable on its policies, we affirm.
 {¶ 2} On April 11, 2001, Troy Anderson was part of a two-man survey crew dispatched to perform measurements preliminary to construction on Ohio Route 25, south of Bowling Green. At approximately 7:00 a.m., Anderson and his crew chief, Jim Wilson, took a van owned by their employer, engineering firm Mannik and Smith, to the site.
 {¶ 3} Ohio Route 25 in this area is a four-lane highway divided by a grassy median. Wilson and Anderson first performed measurements in the northbound lane approximately one and one-half miles north of Mermill Road. Having completed that work, the pair moved to the intersection of Mermill and Route 25. The crew placed warning flags some distance south of the intersection and parked the company van — with its four-way flashers and yellow beacon light on — just off the southeast corner of the crossroad. The men took traffic cones from the van and set four cones in a diamond shape around a survey pin in the center of northbound Route 25, approximately 20 to 25 feet from where the van was parked. Both men were inside the perimeter of the traffic cones when they were struck by a car driven by a uninsured driver. Both were injured; Anderson seriously.
 {¶ 4} Mannik and Smith was insured by a business auto policy with $100,000 per person limits and a $5 million commercial umbrella policy, both issued by appellant, the Cincinnati Insurance Company. Anderson carried a policy with appellee, Nationwide Mutual Fire Insurance Company, with per person underinsured motorist limits of $500,000 per person.
 {¶ 5} On May 22, 2002, Troy Anderson and his wife, Lisa, brought a suit in negligence against the uninsured driver who struck him. Incorporated in the suit was a petition for a declaration of their rights under the policies issued by appellant and appellee.
 {¶ 6} Eventually, appellant moved for summary judgment on the declaration that its business auto coverage was excess only and that there was no coverage under the umbrella policy. Appellee opposed the motion and submitted a cross motion for summary judgment, seeking a declaration that appellant was obligated to cover the Anderson's losses under both the business auto and umbrella policies and that appellee's coverage was excess to that coverage. During the pendency of the motions, the Andersons obtained a default judgment against the uninsured tortfeasor and settled with both insurers.
 {¶ 7} On August 13, 2004, the trial court denied appellant's summary judgment motion, concluding that appellant's coverage was primary as Anderson was within the scope of his employment at the time of the accident and was "occupying" a vehicle insured by appellant. The court found coverage under both of appellant's policies and concluded that, since Anderson was not in his personal vehicle when he was injured, appellee's policy provided secondary coverage only.
 {¶ 8} From this judgment, appellant now brings this appeal, setting forth the following two assignments of error:
 {¶ 9} "First assignment of error
 {¶ 10} "The trial court erred to the prejudice of Defendant-Appellant The Cincinnati Insurance Company by denying the motion for summary judgment of Defendant-Appellant The Cincinnati Insurance Company and granting the motion for summary judgment of Defendant-Appellee Nationwide Mutual Fire Insurance Company.
 {¶ 11} "Second assignment of error
 {¶ 12} "The trial court erred to the prejudice of Defendant-Appellant The Cincinnati Insurance Company by failing to consider and decide all issues set forth in Defendant-Appellant The Cincinnati Insurance Company's motion for summary judgment."
 {¶ 13} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated
 {¶ 14} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 67, Civ.R. 56(C).
 {¶ 15} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery (1984), 11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc.
(1999), 135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 248.
 I. Business Auto Coverage {¶ 16} Appellant serially attacks the trial court's judgment on a number of grounds.
 {¶ 17} The business auto coverage policy issued to Mannik and Smith by appellant contains an uninsured motorist endorsement which provides UM coverage to anyone, "* * * `occupying' a covered `auto' * * *." It is undisputed that the van used by Wilson and Anderson on the day they were stuck was a covered Mannik and Smith vehicle. Appellant's UM endorsement provides that "`occupying' means in, upon, getting in, on, out or off."
 {¶ 18} Appellant first suggests that the trial court never determined whether Anderson was "occupying" the vehicle at issue at the time of the accident. This omission alone, appellant suggests, requires that the trial court's judgment be reversed and remanded for clarification. We do not agree.
 {¶ 19} Although the trial court's judgment does not overtly conclude that Anderson was "occupying" the vehicle, it does expressly note that appellant argued that he was not "occupying" the vehicle, the court then implicitly rejects this argument when it finds coverage under appellant's policy. We see no ambiguity here, thus, no need for "clarification."
 {¶ 20} Next, appellant insists that if the court did rule that Anderson was "occupying" the Mannik Smith van, such a conclusion was erroneous. With differing results, both parties rely on Joins v. Bonner
(1986), 28 Ohio St.3d 398, to determine whether one injured is "occupying" a vehicle for UM/UIM coverage purposes.
 {¶ 21} Young Brian Joins was being dropped off at a babysitter's house by his mother when he exited the passenger side of the car. Joins crossed in front of the car and was struck by an uninsured driver in the opposite lane, before he reached the other side of the street. The car in which Joins was riding had UM/UIM insurance for persons "occupying" it. The policy defined "occupying" in language comparable to the provision at issue here as being, "* * * in or upon or entering into or alighting from" the vehicle. Id. at 399.
 {¶ 22} When the insurer denied coverage on the ground that Joins was not "occupying" the car, Joins sued. The trial court found in favor of the insurer and the court of appeals affirmed. On review before the Supreme Court of Ohio, however, the ruling was reversed. The court concluded that "alighting from" a vehicle included a course of conduct reasonably incident to exiting an automobile and, "* * * should take into account the immediate relationship the claimant had to the vehicle within a reasonable geographic area." Id. at 401, citing Robson v. Lightning RodMut. Ins. Co. (1978), 59 Ohio App.2d 261, 264. The court found coverage, concluding that crossing a street to safety was within the purview of that which could reasonably be expected. Joins at 400.
 {¶ 23} Appellant insists that Joins means that "alighting from" or "getting * * * out" of a car is determined by looking at 1) the claimant's relationship to the vehicle, 2) the claimant's geographic proximity to the vehicle and 3) whether the claimant had reached a point of safety. Appellant argues that Anderson was 20 to 25 feet from the van and had reached a point of safety within the diamond pattern of cones on Route 25.
 {¶ 24} Appellee responds that, as events demonstrated, Anderson had hardly reached a point of safety. In any event, appellee maintains, a point of safety is not a factor in the Joins analysis. Whether or not a safety point has been reached is only a factor if it relates to the claimant's relationship and geographic proximity to the vehicle. Moreover, appellee directs our attention to Norris v. Allstate Ins. Co.
(Dec. 16, 1996), 8th Dist. App. No. 70591, and Disbennet v. UticaNational Ins. Group, 12th Dist. App. No. CA2002-04-009, 2003-Ohio-2013 for the proposition that, applying a proper Joins analysis, Anderson was "occupying" the Mannik and Smith van.
 {¶ 25} In both Norris and Disbennet, the claimant was a surveyor working in the center of a highway amid four traffic cones when struck by an uninsured/underinsured motorist. In each case, the claimant came to the site in an employer's vehicle which was parked 30 and 80 feet, respectively, from the point of impact. Each claimed against his employer's UM/UIM policy. In each case, the court concluded that, as a matter of law, the claimant was "occupying" his employer's vehicle for purposes of establishing UM/UIM coverage. As the Disbennet court concluded, the claimant was, "* * * within a reasonable geographic distance to the insured vehicle and that he was engaged in an activity that was foreseeably identifiable with the use of the insured vehicle at the time of the accident. Disbennet at ¶ 16.
 {¶ 26} We cannot imagine cases more on point than these. Moreover, the analysis employed by each court is well reasoned and in conformity withJoins. Accordingly, the trial court properly found that Anderson was "occupying" his employer's van and, therefore, obtained UM/UIM coverage under appellant's commercial auto policy.
 II. Umbrella Policy {¶ 27} On the day Troy Anderson was injured, his employer held a $5 million commercial liability umbrella policy, covering Mannik and Smith's vehicles and its employees while acting in the scope of employment. Although on its face, this policy contained no UM/UIM coverage, the applicable version of R.C. 3937.18, effective at the time this policy period began, see Ross v. Farmers Ins. Group (1998), 82 Ohio St.3d 281, 288, required an offer of UM/UIM coverage on all policies insuring vehicles licensed or principally garaged in Ohio. Pursuant to Gyori v. JohnsonCoca Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, 568, the UM/UIM coverage offer must be in an amount equal to the liability coverage and both the offer and any rejection must be in writing.
 {¶ 28} When no offer or a defective offer is made, there can be no effective rejection of such coverage and coverage arises as a matter of law. Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161, paragraph 2 of the syllabus. For an offer of UM/UIM coverage to be effective under the statute, the insurer must inform the insured of the availability of the coverage and the proposed premium. The offer must also provide a brief description of the coverage and the coverage limit. Linko v.Indemnity Ins. Co. (2000), 90 Ohio St.3d 445, 447-448. We have held that these requirements are equally as applicable to umbrella policies as they are to motor vehicle liability policies. Kasson v. Goodman, 6th Dist. No. L-01-1432, 2002-Ohio-3022, at ¶ 59. We see no reason to alter this position.
 {¶ 29} There is no dispute that at the time of the accident Troy Anderson was acting within the scope of his employment. Consequently, if UM/UIM coverage is imposed on the umbrella policy, Anderson is a beneficiary of that coverage.
 {¶ 30} Appellant concedes that there is no contemporaneous writing, which would satisfy the Linko requirements, offering UM/UIM coverage for its umbrella coverage of Mannik and Smith. Instead, there is an "Application for Excess Uninsured/Underinsured Motorist Coverage" form signed by a Mannik and Smith vice president in which is checked a box next to an option which reads "I reject Uninsured/Underinsured Motorists coverage under this policy." This form contains no coverage description, no premium amount and no indication of proposed coverage amounts.
 {¶ 31} In the trial court, however, appellant submitted an affidavit from the same Mannik and Smith vice president who signed the original rejection form. This company official averred that, prior to signing the rejection, appellant's agent described the coverage and advised him of the proposed premium. Moreover, the vice president reported, he knew that UM/UIM coverage was available in the same amount as the liability coverage for the policy. This affidavit, appellant insists, combined with the contemporaneous rejection form, establishes that its insured was aware of all of the things Linko requires. Therefore, according to appellant, the insured's rejection of the UM/UIM coverage was informed and knowing.
 {¶ 32} Appellee suggests that the vice president's affidavit is extrinsic to the insurance agreement and, therefore, the trial court was proper not to consider it.
 {¶ 33} We recently held that it is improper to consider evidence extrinsic to the insurance agreement in determining whether the Linko
requirements have been satisfied. Akins v. Harco Ins. Co.,158 Ohio App.3d 292, 300, 2004-Ohio-4267, at ¶ 29. In its reply brief, however, appellant directs our attention to Hollon v. Clary,104 Ohio St.3d 526, 2004-Ohio-6772, for the proposition that extrinsic evidence may be used to show a "meaningful offer" of UM/UIM coverage antecedent to rejection. Nevertheless, as appellee points out in its surreply brief, Hollon, at syllabus, expressly limited the use of extrinsic material to insurance policies subject to the version of R.C.3937.18 following the effective date of 1997 Am.Sub.H.B. 261 (eff. 9-1-97). As appellee properly notes, the latest written UM/UIM rejection applicable here is dated April 8, 1997; therefore, Hollon, by its own terms, is inapplicable. Consequently, the trial court properly concluded that UM/UIM coverage under the umbrella policy arose as a matter of law.
 III. Primacy {¶ 34} Each motor vehicle policy issued by the parties in this matter seeks to limit its coverage to excess of other coverage which may be applicable. The auto insurance policy issued by appellee to Troy Anderson provides:
 {¶ 35} "OTHER INSURANCE
 {¶ 36} "1. If there is other insurance for bodily injury suffered by an insured while occupying a motor vehicle other than [the insured's] auto, our coverage is excess over any other collectible:
 {¶ 37} "a) insurance:
 {¶ 38} "b) self insurance;
 {¶ 39} "c) proceeds from a governmental entity; or
 {¶ 40} "d) sources of recovery other than workers' compensation benefits.
 {¶ 41} "However, this insurance will apply only in the amount by which the limit of coverage under this policy exceeds the total amount collectible from all of the above noted recovery sources.
 {¶ 42} "* * *
 {¶ 43} "3. Except as stated above, if there is other insurance similar to this coverage under any other policy, we will be liable for only our share of the loss. Our share is our proportion of the total insurance limits for the loss.
 {¶ 44} "4. In any event, if more than one policy applies, total limits applicable will be considered not to exceed the highest limits amount of any one of them."
 {¶ 45} The business auto coverage policy issued to Anderson's employer by appellant states:
 {¶ 46} "If there is other applicable insurance available under one or more policies or provisions of coverage:
 {¶ 47} "a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.
 {¶ 48} "b. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis."
 {¶ 49} "c. If the coverage under this Coverage Form is provided.
 {¶ 50} "(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.
 {¶ 51} "(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis."
 {¶ 52} Troy Anderson was not in his own auto covered by appellee when he was injured. Consequently, by the clear terms of his coverage, appellee's duty under the contract is to provide excess coverage over other collectible insurance.
 {¶ 53} Appellant's obligation to Mannik and Smith and, by contractual extension, its employees in the scope of their employment, is to provide primary UM/UIM coverage when such an employee is "occupying" a covered auto. As we have already concluded, Anderson was "occupying" a covered vehicle. Pursuant to section (b) of the "other coverage" part of appellant's UM/UIM endorsement, such coverage becomes excess only in the event the insured (Mannik and Smith) "* * * do[es] not own * * *" the vehicle in which injury occurred. Since Mannik and Smith did own the vehicle Anderson was occupying when injured, the sole condition which would negate appellant's responsibility as a primary insurer was not met.
 {¶ 54} With respect to appellant's umbrella policy, whether we say the UM/UIM coverage arises as a matter of law without condition, or as a contractual extension of "underlying insurance" (the business auto policy), the result is the same. Appellant is the primary insurer on this claim. Thus, the trial court did not err in granting summary judgment to appellee and denying appellant's cross motion for summary judgment. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 55} Appellant's second assignment of error is not separately argued and, therefore, may be disregarded. App.R. 12(A)(2), C. Miller Chevroletv. Willoughby Hills (1974), 38 Ohio St.2d 298, 300.
 {¶ 56} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant pursuant to App.R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Parish, J., Concur.