[Cite as *Washington v. Evans*, 2021-Ohio-587.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jazmine Washington, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 20AP-305 |
| v. | : | (C.P.C. No. 19CV-1251) |
| Decorey Evans et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 4, 2021

**On brief:** *Kisling, Nestico and Reddick, LLC, Douglas J. Blue*, and *Taylor P. Waters*, for appellant. **Argued:** *Douglas J. Blue.*

**On brief:** *Dinsmore & Shohl LLP*, and *Gregory A. Harrison*, for appellee State Farm Mutual Automobile Company. **Argued:** *Jason Goldschmidt.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Jazmine Washington, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, State Farm Mutual Automobile Insurance Company. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On February 24, 2017, uninsured motorist, Decorey Evans, struck appellant with his vehicle at or near 1726 Piedmont Avenue. Appellant alleges injuries to her person and lost income as a result of the collision.

**{¶ 3}**   At the time of the accident, appellant was residing with her grandmother, Mattie Micken. Micken was insured by appellee for automobile insurance with uninsured motorist limits of $100,000 and $5,000 in medical payment coverage.  The State Farm Mutual Automobile Insurance Company automobile insurance policy ("policy") lists a 2012 Suzuki Kizashi as the only covered vehicle.  Appellant separately leased a 2008 Mercury Mountaineer, which she purportedly had a minimum limits SR-22 insurance certificate of financial responsibility for the automobile.  Appellant's coverage for the Mercury did not include uninsured motorist coverage or medical payment coverage.

**{¶ 4}**   Subject to the remaining terms and conditions, the policy covers "***medical expenses*** incurred because of ***bodily injury*** that is sustained by an ***insured*** and caused by a motor vehicle accident."  (Emphasis sic.) (Ex. A. Policy at 10., attached to Nov. 26, 2019 Def.'s Mot. for Summ. Jgmt.)  "***Insured***" is defined as:

> 1. ***you*** and ***resident relatives***:
> a. while ***occupying***:
> (1)   ***your car***;
> (2)   a ***newly acquired car***;
> (3)   a ***temporary substitute car***;
> (4)   a ***non-owned car***; or
> (5)   a ***trailer*** while attached to a ***car*** described in (1), (2), (3), or (4) above.

(Emphasis sic.) (Ex. A. Policy at 9-10.)

**{¶ 5}**   The policy also provides coverage to an insured that sustains bodily injury as a result of an uninsured motorist.  The policy includes an exclusion that precludes uninsured motorist coverage for damages incurred while occupying a vehicle not covered under the policy.  Policy Exclusion 2 states:

> THERE IS NO COVERAGE:
>
> * * *
>
> 2. FOR DAMAGES ARISING OUT OF AND RESULTING FROM ***BODILY INJURY*** TO ANY ***INSURED*** WHILE ANY ***INSURED*** IS OPERATING OR ***OCCUPYING*** A MOTOR VEHICLE ***OWNED BY***, FURNISHED TO, OR AVAILABLE FOR THE REGULAR USE OF ***YOU*** OR ANY ***RESIDENT RELATIVE*** IF THAT MOTOR VEHICLE IS NOT ***YOUR***

**CAR**, A **NEWLY ACQUIRED CAR**, OR A **TEMPORARY SUBSTITUTE CAR**.

(Emphasis sic.) (Ex. A Policy at 16.)

{¶ 6} There is no dispute that appellant qualifies as a "resident relative"[1] as she was residing with her grandmother at the time of the accident. There is also no dispute that the Mercury does not constitute "your car," "a newly acquired car," "a temporary substitute car," or "a non-owned car" as defined under the policy. (Ex. A Policy at 9-10.) The parties agree that whether the uninsured motorist coverage applies depends on whether appellant was "occupying" the vehicle at the time of the accident. The policy defines "**Occupying**" to mean "in, on, entering, or exiting." (Emphasis sic.) (Ex. A Policy at 4.)

{¶ 7} On February 11, 2019, appellant filed her complaint in the Franklin County Court of Common Pleas alleging causes of action for negligence against Decorey Evans, uninsured/underinsured and medical payment coverage against appellee, and subrogation interest against the Ohio Department of Medicaid. Relevant to the instant appeal, appellee filed its answer to the complaint on February 26, 2019. On August 9, 2019, appellant filed a motion for leave to amend the complaint to assert a new cause of action for bad faith, which the trial court granted on September 11, 2019. Appellee filed an amended answer on September 25, 2019.

{¶ 8} On August 8, 2019, appellee deposed appellant regarding the events leading up to the collision. Appellant testified as follows:

Q: Okay. So you're walking around the rear of the vehicle, and you're intending to get into the car, correct?

A: (Indicates affirmatively.)

Q: Is that a yes?

A: Yes.

Q: Okay. And the plan was to get into your car and to drive away to get your children?

A: Yes.

Q: Okay. How far did you get around the car when you were hit?

---

[1] The policy defines "**Resident Relative**" as "a **person**, other than **you**, who resides primarily with the first **person** shown as a named insured on the Declaration Page and who is * * * related to the named insured or his or her spouse by blood, marriage, or adoption." (Emphasis sic.) (Ex. A Policy at 5.)

A: Okay, so I was just about to be at the driver's door.

Q: Were you facing your car?

A: (Indicates affirmatively.)

Q: Is that a yes?

A: Yes.

Q: Okay. Were you reaching for the handle?

A: Yes.

(Ex. B, Washington Dep. at 70-71, attached to Def.'s Mot. for Summ. Jgmt.)

{¶ 9} Appellant continued stating that when she heard the tires immediately before the collision, she turned to "push[] off the car." (Washington Dep. at 73.)

{¶ 10} On November 26, 2019, appellee filed a motion for summary judgment as to all claims alleged against it in the amended complaint. Appellee argued the claim for medical payments should be dismissed because appellant did not qualify as an "insured" under the policy. Appellee also argued that appellant was excluded from uninsured motorist coverage because under the terms of the policy, she was "occupying" the Mercury at the time of the collision. Finally, appellee stated that the bad faith claim should be dismissed as appellant was not covered under the policy, so its denial of coverage was appropriate.

{¶ 11} On April 15, 2020, the trial court granted appellee's motion for summary judgment. The trial court stated that appellant was not entitled to medical payments because she did not meet the definition of "insured" as there is no dispute that the Mercury does not constitute "your car," "a newly acquired car," or "a non-owned car" under the policy. (Apr. 15, 2020 Decision at 4.) Regarding the uninsured motorist claim, the trial court concluded that appellant's actions fell under exclusion No.2 of the policy as she was "occupying" the Mercury at the time of the accident. Finally, the trial court found that because appellee had properly denied uninsured motorist and medical payments coverage, it was entitled it to summary judgment on appellant's bad faith claim.

{¶ 12} On April 28, 2020, appellant filed a notice of partial dismissal of defendants, Decorey Evans and the Ohio Department of Medicaid, pursuant to Civ.R. 41(A). The trial court issued a final judgment entry in favor of appellee on April 30, 2020.

{¶ 13} Appellant filed a timely appeal.

## II.  ASSIGNMENT OF ERROR

{¶ 14} Appellant assigns the following as trial court error:

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT-PLAINTIFF WHEN IT GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

## III.  STANDARD OF REVIEW

{¶ 15} Pursuant to Civ.R. 56(C), summary judgment is appropriate when the moving party establishes that: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence in favor of the nonmoving party, reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *U.S. Speciality Ins. Co. v. Hoffman*, 10th Dist. No. 19AP-189, 2020-Ohio-4114, ¶ 17, citing *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  Once the moving party meets its initial burden, the nonmoving party must set forth specific facts that demonstrate a genuine issue of fact for trial.  *Id.*, citing Civ.R. 56(E); *Dresher* at 293.

{¶ 16} Appellate review of a trial court's ruling on a motion for summary judgment under Civ.R. 56(C) is de novo.  *Hudson* at ¶ 29. De novo review requires the reviewing court to conduct an independent analysis without deference to the trial court's determination. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992).

## IV.  LEGAL ANALYSIS

{¶ 17} In her sole assignment of error, appellant argues the trial court erred by granting appellee's motion for summary judgment.

{¶ 18} In its April 15, 2020 decision, the trial court concluded that appellant was not entitled to coverage for medical payments and uninsured motorist coverage under the

policy.  In the present case, appellant has not alleged in her brief that the trial court erred as to the denial of coverage for medical payments.  Pursuant to App.R. 16(A)(7), appellant shall include in his or her brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities * * * parts of the record on which appellant relies."  This court may also disregard assignments of error that appellant fails to identify in the applicable portions of the record from which the error would be based.  App.R. 12(A)(2). " 'It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error.' " *Cook v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-852, 2015-Ohio-4966, ¶ 40, quoting *Bond v. Canal Winchester*, 10th Dist. No. 07AP-556, 2008-Ohio-945, ¶ 16, citing *Whitehall v. Ruckman*, 10th Dist. No. 07AP-445, 2007-Ohio-6780, ¶ 20.  Because appellant did not raise in her brief whether the trial court erred in denying her claim for medical payments, the issue was not preserved on appeal and is therefore waived.

{¶ 19}  Regarding appellant's claim for the uninsured motorist coverage, whether the exclusion applies turns on whether appellant was "occupying" the Mercury at the time of the accident as defined under the policy.  Because no factual disputes exist, the resolution of this question is a legal determination.  *Burgess v. Erie Ins. Group*, 10th Dist. No. 06AP-896, 2007-Ohio-934, ¶ 10, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995) ("Settled law dictates that interpretation of an automobile liability insurance policy presents a question of law.").

{¶ 20} When reviewing an insurance policy, we are required to construe the language of the policy consistent with the same rules of construction as other written contracts.  *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 665 (1992), citing *Universal Underwriters Ins. Co. v. Shuff*, 67 Ohio St.2d 172 (1981); *Rhoades v. Equitable Life Assur. Soc. of the United States*, 54 Ohio St.2d 45 (1978).  In construing a written instrument, the primary objective is to give effect to the parties' intent, which is presumed to rest in the language of the agreement.  *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, ¶ 29, citing *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, ¶ 9, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus.  " 'Common words appearing in a written instrument will be

given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.' " *In re All Kelley* at ¶ 29, quoting *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶ 21} When the terms of the agreement are clear and unambiguous, a reviewing court need not go beyond the plain and ordinary meaning of the agreement to determine the rights and obligations of the parties. *In re All Kelley* at ¶ 29, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989). Conversely, ambiguity in the language of a contract must be "construed strictly against the insurer and liberally in favor of the insured." (Citations omitted.) *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus.

{¶ 22} Ohio courts have attempted to determine whether a claimant is "occupying" a vehicle under a variety of factual scenarios. As this court has set forth previously, "determining whether a person is 'occupying' a vehicle is not as easy as it might appear at first blush." *Robson v. Lightning Rod Mut. Ins. Co.*, 59 Ohio App.2d 261, 263 (10th Dist.1978). While the terms of an insurance policy can appear unambiguous on its face, it can become ambiguous when determining whether coverage should be applied based on certain factual situations. *Willis v. Gall,* 4th Dist. No. 14CA9, 2015-Ohio-1696, ¶ 16, citing *Etter v. Travelers Ins. Cos.*, 102 Ohio App.3d 325 (2d Dist.1995); *see also Williams v. Safe Auto Ins. Co.*, 8th Dist. No. 83882, 2004-Ohio-3741, ¶ 10.

{¶ 23} In *Joins v. Bonner*, 28 Ohio St.3d 398 (1986), the Supreme Court of Ohio interpreted the term "occupying" for the purpose of coverage after a minor was struck by an uninsured vehicle while crossing the street.[2] The *Joins* court found that under the facts of the case, the minor was "alighting from" the vehicle at the time of the accident and therefore an insured person occupying the vehicle as defined under the policy. *Id.* at 401. The *Joins* court wrote:

> In construing uninsured motorist provisions of automobile insurance policies which provide coverage to persons "occupying" insured vehicles, the determination of whether a vehicle was occupied by the claimant at the time of an accident should take into account the immediate relationship the

---

[2] In *Joins*, "occupying" was defined in the insurance policy as "in or upon or entering into or alighting from." *Joins* at syllabus.

claimant had to the vehicle, within a reasonable geographic
area.

*Id.*, citing *Robson* at 264.

{¶ 24} Ohio courts have also applied other factors to resolve whether there is a sufficient relationship between the claimant and automobile to allow coverage. *See Morris v. Continental Ins. Co.*, 71 Ohio App.3d 581, 587 (10th Dist.1991) (finding performance of a task related to the operation of a vehicle was adequate basis for a relationship between the vehicle and claimant); *Renter v. Anthony*, 8th Dist. No. 81233, 2003-Ohio-431, ¶ 51; *Yoerger v. Gen. Acc. Ins. Co. of Am.*, 98 Ohio App.3d 505, 507 (10th Dist.1994) (concluding that there is a sufficient relationship to the insured vehicle if the insured's conduct is "foreseeably identifiable" to the typical use of the vehicle); *Halterman v. Motorists Mut. Ins. Co.,* 3 Ohio App.3d 1, 4 (8th Dist.1981) (finding a relationship exists if the insured's actions are "vehicle-oriented" versus "highway-oriented" when the accident occurred).

{¶ 25} While Ohio courts have liberally construed "occupying" under a variety of circumstances, all the above cases have interpreted "occupying" when considering whether to provide coverage, not whether coverage should be excluded.  As such, interpreting "occupying" under *Joins*[3] and other broad tests when reviewing the application of an insurance policy's exclusion would preclude far more activity than the policy intended.[4] Such an interpretation would be in contravention to the Supreme Court's language in *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818.  "[A]n exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.) (Citations and quotations omitted.) *Hunter* at ¶ 11.  It is well-settled law that an ambiguous provision in an insurance policy must be strictly construed against the insurer and liberally construed in favor of the insured.  *Hunter* at ¶ 11. "However, the rule of strict construction does not permit a court to change the obvious intent of a provision just to impose coverage*." Hybud Equip. Corp.* at 665.  As such, our

---

[3] In fact, *Joins* expressly noted the analysis is limited to cases where the court is "construing uninsured motorist provisions of automobile insurance policies which provide coverage to persons 'occupying' insured vehicles." *Joins* at 401.

[4] A similar distinction was drawn in *Darno v. Davidson*, 9th Dist. No. 27546, 2015-Ohio-2619, which stated, "[a]pplying these tests in situations like this one, where being an occupant of a vehicle excludes a claimant from coverage, would be self-defeating and would contradict the well-settled rule of liberal construction in favor of an insured and against the insurer." *Id.* at ¶ 15.

review must look at whether the factual scenario at issue is the type of event clearly intended to be excluded from coverage under the policy.

{¶ 26} The Ninth District Court of Appeals has also considered whether an exclusion under an automobile insurance policy should preclude coverage based on whether a claimant was "occupying" a vehicle. *Darno v. Davidson*, 9th Dist. No. 27546, 2015-Ohio-2619. In *Darno*, claimant's vehicle had stalled while attempting to cross the southbound lane to the northbound lane. Claimant and two friends exited the vehicle trying to push it off the road. One of the claimant's friends observed another vehicle coming for Darno and yelled for him to run. Darno began running away from the vehicle but was struck by an uninsured motorist several feet away from the vehicle.

{¶ 27} Darno filed a complaint seeking coverage for uninsured motorist coverage under his father's insurance policy. The insurer filed a motion for summary judgment arguing that claimant was "occupying" the vehicle at the time of the accident excluding him from coverage.[5] The trial court granted the insurer's motion for summary judgment, which was subsequently appealed. *Darno v. Davidson*, 9th Dist. No. 26760, 2013-Ohio-4262, ¶ 10. After the case was remanded for additional discovery, the case returned to the Ninth District to resolve whether Darno was "occupying" the vehicle under the policy. *Darno,* 2015-Ohio-2619, at ¶ 7. The *Darno* court concluded under the facts, the policy language was ambiguous, and the policy exclusion did not apply as appellant was not "occupying"[6] the vehicle.

{¶ 28} While *Darno* presents similar legal issues to the instant case, the facts are distinguishable in several important ways. The *Darno* court noted that claimant was running away from the vehicle and was several feet away at the time of the accident. While in proximity to the vehicle, the insurer's intention to enter the vehicle had shifted to retreating from the oncoming vehicle. Here, while appellant stated she turned away from her vehicle immediately before impact, appellant conceded that prior to the collision she was approaching her vehicle, reaching for the door, and intended to enter the vehicle. Appellant acknowledged that she had no warning that the uninsured vehicle was approaching and was looking in the opposite direction. (Washington Dep. at 72.) Appellant

---

[5] In *Darno*, there was no dispute that claimant's vehicle was not covered under his father's insurance policy.
[6] The insurance policy in *Darno* defined "occupying" as "in, upon, getting in, on, out or off." *Darno*, 2015-Ohio-2619, at ¶ 13.

also stated that "it just happened to[o] fast" and wanted to run but "didn't have time." (Washington Dep. at 73.)   While *Darno*, 2015-Ohio-2619, and several other courts have concluded that the definition of "occupying" is ambiguous, the factual circumstances create the ambiguity, not the definition on its face.  *Darno*, 2015-Ohio-2619, at ¶ 13 (stating that when "[a]pplying this definition to the facts of this case, the only question is whether [claimant] was still 'occupying' the [vehicle] at the same time he was running away from it."); *see also Etter*, 102 Ohio App.3d at 328*, citing Robson*, 59 Ohio App.2d at 263 (stating that the term "occupying" can "become[] ambiguous when determining whether insurance coverage should be extended in *certain factual circumstances*.") (Emphasis added.); *Willis*, 2015-Ohio-1696, at ¶ 16, citing *Etter* at 328 (noting the definition of "occupying" can become "ambiguous when determining whether insurance coverage should be extended in *certain factual circumstances*.") (Emphasis added.)

{¶ 29}  After a careful review of the record and applicable case law, we find appellant was "entering" the vehicle as defined under the policy's definition of "occupying."  Appellant testified that prior to the accident, she intended to get into her car and drive away to pick up her children.  When appellant was facing the car and reaching for the handle, she was struck by the uninsured vehicle.  Appellant was in the immediate vicinity of her automobile as evidenced by testifying she was pushed into the Mercury by the uninsured motorist's vehicle.  (Washington Dep. at 74.)  Even applying a narrow reading of the policy, there is little doubt that the act of reaching for the handle of a vehicle with the intent to get into the vehicle and drive away was encompassed under the policy's definition of "entering."  While we are cognizant that the policy exclusion must be read narrowly, we cannot create ambiguity where none exists.  Accordingly, we find appellant was "occupying" the insured vehicle precluding coverage under the policy.

{¶ 30}  Appellant argues that she had not begun the process of "entering" because she was not touching the vehicle.  We find this argument unpersuasive.  While *Williams v. Safe Auto Ins. Co.*, 8th Dist. No. 83882, 2004-Ohio-3741, concerned the application of coverage, and not an exclusion, the facts demonstrate a particularly narrow interpretation of "occupying" that is informative on this issue.  A brief review is instructive.

{¶ 31}  In *Williams*, the claimant had parked her vehicle to speak with other drivers pulled over to the side of the road.  After concluding the conversation, the claimant was

struck by debris from another car that collided with her vehicle and another parked vehicle. At the time of the accident, claimant was "right at the car." *Id.* at ¶ 2. Claimant filed suit for negligence and sought uninsured motorist coverage. The parties filed cross-motions concerning the interpretation of "occupying"[7] under the policy. The trial court granted claimant's motion for summary judgment finding she was "occupying" the vehicle at the time of the accident. In affirming the judgment of the trial court, the Eighth District Court of Appeals concluded that claimant had an "immediate relationship" to the vehicle as she was the driver and returning the vehicle at the time of the accident. *Id.* at ¶ 17. The *Williams* court reasoned that the "act of leaving the other parked car and returning to her own car demonstrates that she was 'getting in' the car."[8] *Id.* Moreover, the *Williams* court stated claimant was within the geographic area as she was "right at the car" at the time of the accident. *Id.*

{¶ 32} Ohio courts have repeatedly found claimants "occupying" vehicles for purposes of allowing coverage in far more removed geographic areas. *See*, *e.g.*, *Anderson v. Nationwide Mut. Fire Ins. Co.*, 6th Dist. No. L-04-1251, 2005-Ohio-3043 (concluding a surveyor was "occupying" the insured vehicle while surveying for an engineering firm on the roadway 20 to 25 feet from the parked van); *State Farm Mut. Auto. Ins. Co. v. Cincinnati Ins. Co.*, 8th Dist. No. 62930 (June 17, 1993) (finding "[i]t is irrelevant whether or not claimants were in actual contact with the vehicle" when a man was walking along a highway retrieving two-liter soda bottles 100 to 110 feet from the insured vehicle); *McCallum v. Am. States Ins. Co.*, 6th Dist. No. L-90-354 (Nov. 15, 1991) (concluding claimant was occupying the vehicle after he was walking back to his truck after setting flares for an overturned vehicle on the side of the road).

{¶ 33} Conversely, when considering whether a claimant should be excluded from coverage, we are required to look at whether the policy clearly intended to exempt the activities at issue. While we must undertake a narrower analysis, we are not required to find an exclusion applies under a single set of facts but instances that are clearly

---

[7] The insurance policy in *Williams* defines "occupying" as "in, on, getting in, or getting out of a covered auto." *Williams* at ¶ 11.

[8] The *Williams* court bolstered its position by citing to language in *Renter*, 2003-Ohio-431, that posited that the claimant in that case would have been "occupying" the vehicle if she had attempted to return to the vehicle versus standing by another vehicle at the time of the accident. *Id.* at ¶ 17.

contemplated under the policy. As there is no basis in the language of the policy or prior case law that appellant must have physical contact with the vehicle for the exclusion to apply, we decline to create such a requirement.

{¶ 34} Finally, appellant argues that the trial court erred in dismissing her cause of action for bad faith.[9] As this court has set forth previously, if the basis for denial of coverage is correct, it is per se reasonable. *Hahn's Elec. Co. v. Cochran*, 10th Dist. No. 01AP-1391, 2002-Ohio-5009, ¶ 42. As such, if the denial of coverage was proper, appellant's claim for bad faith cannot be maintained. *Pasco v. State Auto. Mut. Ins. Co.*, 10th Dist. No. 99AP-430 (Dec. 21, 1999), quoting *GRE Ins. Group v. Internatl. EPDM Rubber Roofing Sys. Inc.*, 6th Dist. No. L-98-1387 (Apr. 30, 1999). In the instant case, we have concluded that the policy's exclusion applies as appellant was "occupying" the vehicle at the time of the collision. Therefore, because appellant was not entitled to coverage under the policy, the trial court did not err in dismissing appellant's bad faith claim.

{¶ 35} Accordingly, appellant's sole assignment of error is overruled.

## V. CONCLUSION

{¶ 36} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and BEATTY BLUNT, JJ., concur.

_____

---

[9] As set forth previously, appellant failed to raise the trial court's decision to grant appellee's denial of medical payments in her appellate brief. Pursuant to App.R. 16(A)(7), the argument is waived.