[Cite as *BBI Logistics, L.L.C. v. GRS Transport, Inc.*, 2026-Ohio-1146.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BBI Logistics, LLC, | : | |
| Plaintiff-Appellant, | : | No. 23AP-766 (C.P.C. No. 22CV-4222) |
| v. | : | (REGULAR CALENDAR) |
| [GRS Transport, Inc. et al.], | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 31, 2026

**On brief:** *Benbow Law Offices LLC*, and *Brian W. Benbow*, for Appellant. **Argued:** *Brian W. Benbow*.

**On brief:** *Gregory, Meyer & Chapnick, P.C.*, and *Michele A. Chapnick* for Travelers Property Casualty Company of America. **Argued:** *Michele A. Chapnick*.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Plaintiff-appellant, BBI Logistics LLC ("BBI"), appeals a judgment of the Franklin County Court of Common Pleas that granted summary judgment to defendant-appellee, Travelers Property Casualty Company of America ("Travelers"). For the following reasons, we affirm that judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} BBI is a freight brokerage logistics company. Travelers issued to BBI a commercial inland marine insurance policy effective October 25, 2020 through October 25, 2021, which included "cargo and logistics pak" coverage. (Capitalization omitted.) (Def.'s Ex. E at 19, July 28, 2023 Def.'s Mot. for Summ. Jgmt.) In this insurance policy, Travelers agreed to "pay those sums" BBI became "legally obligated to pay as damages as a . . .

[l]ogistics [s]ervice [p]rovider . . . for direct physical loss of or damage to [c]overed [p]roperty caused by or resulting from a [c]overed [c]ause of [l]oss." *Id*.

{¶ 3} In February 2021, BBI arranged for defendant, GRS Transport Inc. ("GRS"), to transport 20 pallets of frozen chicken for BBI's client, Bird in Hand Farms, Inc. ("Bird in Hand"). GRS, in turn, subcontracted with Summer Express, Inc. ("Summer Express"), to transport the load. Michael Hill, a tractor-trailer driver employed by Summer Express, arrived at Wayne Farms in Union Springs, Alabama on February 13, 2021 to pick up the load of chicken. After the chicken was loaded into Hill's refrigerated trailer, the trailer was sealed. Hill then began driving the shipment of chicken to Standard Meat Company ("Standard Meat") in Saginaw, Texas.

{¶ 4} As Hill drove his tractor trailer to Texas, he encountered a winter storm. Due to the snow and ice, Hill stopped at his residence in Monroe, Louisiana. For the next four days, Hill's tractor trailer "remained continuously parked" on a residential street in Monroe, Louisiana. (Hill Aff. at ¶ 10.) On February 17, 2021, during an inspection of the tractor trailer, Hill discovered that someone had cut the seal off the back door of the trailer, entered the interior of the trailer, and accessed one of the large, pallet-sized boxes that contained frozen chicken. The unknown intruder had stolen approximately 15 to 20 pounds of chicken. Hill notified the Monroe Police Department, which issued a police report regarding the burglary.

{¶ 5} On February 21, 2021, Hill resumed driving to Saginaw, Texas. Hill delivered the load of frozen chicken to Standard Meat on February 22, 2021. Standard Meat, however, rejected the entire load. BBI then reimbursed Bird in Hand $52,400 for its loss.

{¶ 6} On June 21, 2022, BBI filed suit against GRS and Travelers. BBI asserted that GRS breached the parties' broker/carrier agreement, which made GRS liable for all damages arising out of GRS's transport of freight.[1] With regard to Travelers, BBI averred that its insurance policy included coverage for the loss of and/or damage to the shipment of frozen chicken, and Travelers breached the policy by not providing full payment for BBI's loss. BBI also contended that Travelers acted in bad faith in investigating and evaluating BBI's insurance claim and ultimately denying BBI full coverage.

---

[1] After BBI obtained a default judgment against GRS, the trial court entered a judgment against GRS ordering it to pay damages in the amount of $52,400, plus postjudgment interest and costs. GRS did not appeal this judgment.

{¶ 7} On November 2, 2022, the parties submitted to the trial court a proposed case schedule, which included a discovery deadline of June 30, 2023. The trial court adopted the proposed case schedule in an order dated December 7, 2022. During the seven-month discovery period, the only discovery BBI conducted was the service of interrogatories and requests for the production of documents on Travelers in November 2022.

{¶ 8} Travelers served discovery requests, including requests for admission, on BBI on December 1, 2022. All Travelers's discovery requests required answers within 28 days after service. Before the discovery responses were due, the parties agreed that they would extend the due date for all outstanding discovery requests—whether made by Travelers or BBI—to January 27, 2023. BBI, however, did not respond to Travelers's discovery requests on the due date. On January 31, 2023, Travelers's counsel told BBI's counsel that if she did not receive BBI's responses by February 3, 2023, she would seek court intervention. BBI did not respond. Therefore, on February 9, 2023, Travelers moved to deem its requests for admission admitted and to compel responses to its first set of interrogatories and requests for production of documents.

{¶ 9} On February 13, 2023, BBI filed a notice of service of its responses to Travelers's requests for admission. BBI attached to its notice a copy of its responses to the requests for admission, which included a certificate of service dated February 13, 2023.

{¶ 10} On March 8, 2023, the trial court entered an order granting Travelers's motion. The trial court deemed Travelers's requests for admissions admitted, and it ordered BBI to serve full and complete responses to Travelers's interrogatories and requests for the production of documents within seven days of the date of the order.

{¶ 11} On May 30, 2023, Travelers moved to extend the remaining dates of the scheduling order, including the June 30, 2023 discovery deadline and the July 28, 2023 dispositive motion deadline.[2] Travelers sought to extend both of these deadlines by 90 days, in part, because it was having difficulty scheduling the deposition of Summer Express's tractor-trailer driver, Hill. Travelers explained that Hill had knowledge of facts relevant to whether the insurance policy provided coverage in this case. Travelers's

---

[2] This motion also requested that the trial court strike BBI's expert witness and preclude her from testifying or, alternatively, to compel BBI to produce its expert for a deposition. This portion of the motion became moot when BBI produced its expert for a deposition.

multiple attempts to serve Hill with a subpoena and deposition notice had failed because Hill, an interstate tractor-trailer driver, was often away from home.

{¶ 12} In response, BBI contended that "[t]here exist no facts in support of any extension of the pretrial deadlines herein." (June 12, 2023 Pl.'s Reply at ¶ 5.) BBI further stated, "Travelers has failed to reasonably secure subpoenas for witnesses in a diligent manner for which this Court must not award such dilatory actions." *Id.*

{¶ 13} When the trial court did not timely rule on Travelers's motion for an extension of the case schedule, Travelers filed a motion for summary judgment on the existing dispositive motion deadline. Travelers supported its motion with affidavits signed by Hill and the owner-operator of Summer Express, Inderjit Singh. In relevant part, Travelers acknowledged that the insurance policy required it to pay for the "loss of or damage to [c]overed [p]roperty," but Travelers argued the chicken did not qualify as "[c]overed [p]roperty" under the policy. (Def.'s Ex. E at 19, July 28, 2023 Def.'s Mot. for Summ. Jgmt.) Travelers pointed out that within the "cargo theft . . . exclusion[]," set forth in an endorsement, the policy excluded from the ambit of covered property:

> Property in or on a vehicle, trailer or container at any location for more than twenty-four hours from the time it arrived at that location, including [p]roperty in or on a vehicle, trailer or container if we are unable to determine the time of loss necessary to this clause. This exclusion does not apply to [c]overed [p]roperty located at a "[t]erminal" or "[f]acility" listed in the [d]eclarations.

*Id.* at 42. Relying on Hill's and Singh's affidavits, Travelers asserted the cargo theft exclusion applied because (1) the trailer containing the load of frozen chicken was parked on a residential street in Monroe, Louisiana for approximately 4 days, well past the 24-hour limit, and (2) because no one knows when the intruder broke into the trailer, no one can determine the time of loss.

{¶ 14} BBI did not file a memorandum in opposition to Travelers's motion for summary judgment. Rather, BBI filed a trio of motions. First, BBI moved to strike all the evidence Travelers relied upon in its motion for summary judgment as inadmissible. Second, BBI moved for reconsideration of the trial court's order deeming all the requests for admission admitted. Third, BBI moved to hold the motion for summary judgment in

abeyance pursuant to Civ.R. 56(F). BBI sought additional time under Civ.R. 56(F) so it could depose witnesses, including Hill and Singh.

{¶ 15} In a decision and entry issued December 11, 2023, the trial court denied BBI's motion for reconsideration of the order deeming the requests for admission admitted, and it granted Travelers's motion for summary judgment. The trial court did not explicitly rule on BBI's motion to strike or BBI's Civ.R. 56(F) motion. As to Travelers's motion for summary judgment, the trial court concluded that Travelers presented unrebutted evidence that the frozen chicken was not covered property under the cargo theft exclusion. Therefore, the trial court held that Travelers did not breach the insurance policy by denying BBI coverage for the loss and/or damage to the chicken. Due to the lack of coverage, the trial court found BBI's claim for bad faith also failed.

## II. ASSIGNMENTS OF ERROR

{¶ 16} BBI now appeals the trial court's December 11, 2023 judgment, and it assigns the following errors:

> [1.] THE TRIAL COURT COMMIT[T]ED PREJ[U]DICIAL ERROR BY NOT DECIDING THIS CASE ON THE MERITS.
>
> THE TRIAL COURT COMMITTED PREJUD[I]CIAL ERROR WHEN IT DEEMED APPELLEE'S REQUESTS FOR ADM[I]SSIONS ADMITTED ON MARCH 8, 2023 WHEN THOSE ADMISSIONS WERE DENIED BY APELLANT ON THE RECORD ON FEBRUARY 13, 2023. IN THAT THE ADMISSIONS WERE TIMELY DENIED, THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING LEAVE TO RECOGNIZE THAT THE ADMISSIONS WERE PREVIOUSLY DENIED.
>
> THE TRIAL [COURT] ACCORDINGLY COMMITTED PREJUDIC[I]AL ERROR BY EFFECTIVELY ISSUING A DEFAULT JUDGMENT BY ADMITTING IMPROPER EVIDENCE IN THE SUMMARY JUDGMENT PROCEEDING -- INCLUDING ADMITTING REQUESTS FOR ADMISSION THAT HAD BEEN PREVIOUSLY DENIED BY APPELLANT ON THE RECORD MONTHS PRIOR TO THE TRIAL COURT DEEMING THEM TO BE ADMITTED. THESE REQUESTS FOR ADMISSION (THAT WERE IMPROPERLY ADMITTED) WERE CENTRAL TO THE DISPOSITION OF APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

[2.] THE TRIAL [COURT] COMM[I]TTED PREJUDIC[I]AL ERROR BY EFFECTIVELY ISSUING A DEFAULT JUDGMENT BY OVERRULING THE CIV.R. 56(F) MOTION WITHOUT EXPLANATION ON A CASE THAT WAS IN ITS INFANCY.

THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING PLAINTIFF/APPELLANT'S MOTION FOR AN EXTENSION OF TIME TO REPLY TO APPELLEE'S MOTION FOR SUMMARY JUDGMENT FILED PURSUANT TO CIV.R. 56(F). THIS ABUSE OF DISCRETION IS EXTREMELY PREJUDICIAL IN THAT APPELLANT HAD A PENDING MOTION TO STRIKE EVIDENCE SUBMITTED BY APPEL[L]EE THAT WAS NOT ADMISSIBLE UNDER CIV.R. 56(C), WHICH THE TRIAL COURT ALSO DENIED *SUB SILENTIO*.

[3.] THE TRIAL COURT ADMITTED IMPROPER HEARSAY EVIDENCE UNDER CIV.R. 56(C) IN RULING ON SUMMARY JUDGMENT.

THE TRIAL COURT FURTHER COMMITTED PREJUDICIAL ERROR BY COMPLET[LY] IGNORING AND NOT CONSIDERING APPELLANT'S UNCONTRADICTED EXPERT'S DEPOSITION (DAWN HILL) IN VIOLATION OF STATE v. WEAVER. THIS TESTIMONY ALONE CREATES GENUINE ISSUES OF MATERIAL FACT AND PRECLUDES JUDGMENT AS A MATTER OF LAW FOR APPELLEE.

THE TRIAL [COURT] FURTHER COMM[I]TTED PREJUDIC[I]AL ERROR BY NOT EXPRESSLY RULING UPON APPELLANT'S MOTION TO STRIKE PRIOR TO ISSUING A DECISION ON APPELLEE'S MOTION FOR SUMMARY JUDGMENT, ESPECIALLY IN LIGHT OF APPELLANT'S MOTION PURSUANT TO CIV.R. 56(F).

[4.] THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING SUMMARY JUDGMENT WHEN THE MOVING PARTY, APPEL[L]EE, WHEN GENUINE ISSUES OF MATERIAL FACT EXISTED AND APPELLEE WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

## III. ARGUMENT

### A. FIRST ASSIGNMENT OF ERROR—DEFAULT ADMISSION OF REQUESTS FOR ADMISSION AND DENIAL OF WITHDRAWAL

{¶ 17} By its first assignment of error, BBI argues that the trial court erred in deeming Travelers's requests for admission admitted and not allowing BBI to withdraw or amend its admissions. We find this argument unavailing.

{¶ 18} Civ.R. 36 permits a party to serve requests for admission on another party. The matter in the request is admitted unless, within the period designated in the request, the responding party answers or objects to the request. Civ.R. 36(A)(1). Thus, failure to timely respond to requests results in the requests becoming admissions. *Cleveland Trust Co. v. Willis*, 20 Ohio St.3d 66, 67 (1985). An admission by failure to timely respond is conclusive as to the matter contained in the request, and that admission becomes a fact of record the trial court must recognize. *Bankers Healthcare Group, L.L.C. v. Pozycki*, 2025-Ohio-5421, ¶ 12 (10th Dist.); *Commonwealth Cas. Ins. Co. v. Small*, 2025-Ohio-184, ¶ 15 (10th Dist.). Such an admission occurs automatically; the requesting party need not file a motion seeking court confirmation of the admission. *Pozycki* at ¶ 12; *Autovest, L.L.C. v. Ruff*, 2023-Ohio-2937, ¶ 15 (10th Dist.); *accord Progressive Direct Ins. Co. v. Harrison*, 2017-Ohio-8981, ¶ 9-10, 12 (recognizing that Civ.R. 36 is self-enforcing). Nevertheless, as a practical matter, filing a motion to deem requests admitted brings the substance of the admissions to the trial court's attention and makes the admissions part of the record. *Harrison* at ¶ 12.

{¶ 19} Any matter admitted under Civ.R. 36 is conclusively established unless the trial court, on motion, permits withdrawal or amendment of the admission. *Willis* at 67, citing Civ.R. 36(B). A trial court may permit withdrawal or amendment "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining his action or defense on the merits." Civ.R. 36(B). The first part of this test is met when upholding the admission would result in the inadvertent or negligent admission of key disputed issues and, thus, practically eliminate any presentation of the case on its merits. *Lakeview Loan Servicing, L.L.C. v. Amborski*, 2016-Ohio-2978, ¶ 17 (6th Dist.); *Kutscherousky v. Integrated Communications Solutions, L.L.C.*, 2005-Ohio-4275, ¶ 19 (5th Dist.). The second part of the test requires consideration of the difficulty confronting a party who must suddenly obtain evidence to prove a matter that the opposing party had previously admitted. *Small* at ¶ 17, fn. 1.

{¶ 20} The decision to permit withdrawal or amendment of an admission rests in the trial court's sound discretion. *Id.* at ¶ 19. Therefore, an appellate court will not reverse a ruling on a motion to withdraw or amend an admission absent an abuse of discretion. *Id.*

{¶ 21} In this case, Travelers served requests for admission on BBI on December 1, 2022, and gave BBI 28 days in which to file its responses. Before the December 29, 2022 deadline for responding to the requests for admission, the parties agreed to extend the deadline to January 27, 2023. When BBI did not respond to the requests for admission by January 27, 2023, BBI admitted to the matters within the requests. Although BBI served answers and objections to the requests on Travelers on February 13, 2023, those responses were not timely. By operation of Civ.R. 36(A)(1), by the time BBI belatedly responded to the requests, BBI's failure to meet the January 27, 2023 deadline had already resulted in the admission of all the requests. The trial court's March 8, 2023 order deeming the requests admitted merely formalized the legal reality.

{¶ 22} BBI, however, argues that we must interpret the trial court's March 8, 2023 order as granting BBI leave until March 15, 2023 to file its responses to the requests for admission. To support this argument, BBI points to the trial court's December 11, 2023 decision and entry, which erroneously recounts that, "the Court's decision of March 8, 2023, granted BBI an additional 7 days to file [its] responses to Travelers['s] Requests for Admission[.]" (Dec. 11, 2023 Decision & Entry at 2-3.) In fact, the March 8, 2023 order actually states, "Plaintiff shall serve full and complete responses to Travelers'[s] . . . *Request*[s] *for Production of Documents* within 7 days of the date of this Order[.]" (Emphasis added.) (Mar. 8, 2023 Order at ¶ 2.) Given the unambiguous language in the March 8, 2023 order, we conclude that the trial court misstated the substance of its March 8, 2023 order in its December 11, 2023 decision and entry. The trial court did not retroactively accord BBI additional time to respond to Travelers's requests for admission in its December 11, 2023 decision and entry.

{¶ 23} We thus turn to the question of whether the trial court abused its discretion by not permitting BBI to withdraw or amend its admissions. When BBI belatedly responded to the requests for admission on February 13, 2023, it denied 10 of the 19 requests. Thus, we must determine whether permitting the withdrawal of BBI's default admissions to those ten requests would promote the presentation of the merits of the action

and prejudice Travelers. *See* Civ.R. 36(B) (setting forth the two-prong test). Our review, however, is complicated by BBI's failure to address the elements of the Civ.R. 36(B) test. Nevertheless, upon review of the requests for admission and the evidence attached to Travelers's motion for summary judgment, we conclude that the first part of the test is not satisfied.

{¶ 24} In arguing for summary judgment, Travelers relied sparingly on BBI's default admissions, so those admissions did not practically eliminate the need for presentation of Travelers's case for summary judgment on its merits. To prove its defense that the cargo theft exclusion negated coverage, Travelers referred almost exclusively to the facts set forth in Hill's and Singh's affidavits. Although Travelers also cited BBI's admission that BBI had "no knowledge of the actual time of loss," BBI made that admission of its own volition in its February 13, 2023 responses, so it was not an admission BBI sought to withdraw. (Feb. 13, 2023 Pl.'s Resp. at No. 19.) Moreover, Travelers did not depend on BBI's default admission that the insurance policy attached to the requests was a true and correct copy of BBI's policy. Instead, Travelers submitted an affidavit from Kenneth Kupec, an assistant vice president of document management for Travelers Indemnity Company, to authenticate the commercial inland marine insurance policy Travelers provided to BBI for the period of October 25, 2020 through October 25, 2021.

{¶ 25} Given Travelers's sparse reliance on BBI's default admissions in the motion for summary judgment, we conclude that the admissions did not practically eliminate the presentation of evidence on the merits. Because BBI failed to establish the first part of the Civ.R. 36(B) test, we conclude that the trial court did not abuse its discretion in denying BBI leave to withdraw its ten default admissions.

{¶ 26} In sum, BBI's failure to timely respond to the requests for admission resulted in the requests becoming admissions. The trial court did not err either in refusing to grant BBI leave to withdraw its default admissions or in considering those admissions as evidence. Accordingly, we overrule BBI's first assignment of error.

### B. ASSIGNMENT OF ERROR TWO—DENIAL OF CIV.R. 56(F) MOTION

{¶ 27} By its second assignment of error, BBI argues that the trial court erred in not granting its motion for a Civ.R. 56(F) continuance. We disagree.

{¶ 28} As an initial matter, we recognize that the trial court did not expressly rule on BBI's Civ.R. 56(F) motion. However, "[a] motion not expressly decided by a trial court when a case is concluded is ordinarily presumed to have been overruled." *Kostelnick v. Helper*, 2002-Ohio-2985, ¶ 13. An appellate court, therefore, presumes that a trial court that grants summary judgment without ruling on a pending Civ.R. 56(F) motion has denied the Civ.R. 56(F) motion. *Huntington Natl. Bank v. Bywood, Inc.*, 2013-Ohio-2780, ¶ 5 (10th Dist.); *Perpetual Fed. Savs, Bank v. TDS2 Property Mgt., L.L.C.*, 2009-Ohio-6774, ¶ 9 (10th Dist.). We thus presume that the trial court denied BBI's Civ.R. 56(F) motion.

{¶ 29} Civ.R. 56(F) provides a mechanism for a party opposing summary judgment to request additional time so that it may obtain evidence to assist in responding to the motion for summary judgment. *Sultaana v. Ohio Dept. of Rehab. & Corr.*, 2025-Ohio-2312, ¶ 33 (10th Dist.). Civ.R. 56(F) requires the party requesting the continuance to submit an affidavit that sets forth "sufficient reasons" explaining why that party cannot present by affidavit "facts essential to justify the party's opposition" to summary judgment. Civ.R. 56(F). Thus, the requesting party bears the burden of demonstrating why it cannot present evidence to oppose summary judgment without a continuance. *In re Estate of Carte*, 2023-Ohio-4286, ¶ 44 (10th Dist.); *Pickens v. Kroger*, 2014-Ohio-4825, ¶ 18 (10th Dist.). An affidavit merely requesting a continuance for the general purpose of conducting discovery does not present a sufficient reason for granting a Civ.R. 56(F) motion. *Sultaana* at ¶ 33; *GMAC Mtge., L.L.C. v. Purnell*, 2014-Ohio-940, ¶ 13 (10th Dist.). Moreover, a lack of diligence in conducting discovery militates against the granting of a Civ.R. 56(F) motion. *Arnold v. Columbus*, 2015-Ohio-4873, ¶ 24 (10th Dist.); *Bank of Am., N.A. v. Mark*, 2013-Ohio-3575, ¶ 20 (12th Dist.); *Singleton v. Ohio Concrete Resurfacing, Inc.*, 2007-Ohio-2012, ¶ 23 (10th Dist.). "A party involved in litigation cannot sit on his hands and ignore the proceedings only to later claim an unfair disadvantage." *Mark* at ¶ 24.

{¶ 30} The provisions of Civ.R. 56(F) are discretionary; not mandatory. *Carte* at ¶ 45; *Purnell* at ¶ 12. Consequently, an appellate court will not reverse a trial court's denial of a Civ.R. 56(F) motion absent an abuse of discretion. *Sultaana* at ¶ 33; *Carte* at ¶ 45.

{¶ 31} In this case, BBI sought a Civ.R. 56(F) continuance so that it could depose Hill, the Summer Express tractor-trailer driver; Singh, the Summer Express owner-operator; and Amy Renwick, a Travelers claims adjuster. When BBI sought the Civ.R. 56(F)

continuance in August 2023, it had known that these three witnesses could testify to information relevant its claims and Travelers's defenses for over eight months. Based on the contents of the documents attached to BBI's complaint, BBI was aware of both Hill's involvement in the shipment of the chicken and Renwick's role in denying BBI's insurance claim before BBI initiated litigation. BBI learned that Travelers would invoke the cargo theft exclusion when Travelers set forth its defenses, including the cargo theft exclusion, in the answer it filed on September 22, 2022. BBI itself identified Hill and Renwick as potential witnesses in its witness list filed November 30, 2022. Travelers identified Singh as a potential witness in its witness list filed January 3, 2023.

{¶ 32} BBI had consented to a discovery cut-off date of June 30, 2023, which the trial court adopted in a case scheduling order dated December 7, 2022.[3] Even with this discovery cut-off date looming, BBI did not pursue any witness depositions. In contrast to BBI's inaction, Travelers tried repeatedly, but unsuccessfully, to subpoena the Summer Express workers for a deposition. Beginning on May 30, 2023, Travelers sought an extension of the discovery cut-off date due to the difficulty it encountered subpoenaing the out-of-state Summer Express workers. Notably, as late as June 12, 2023, BBI opposed the extension of the June 30, 2023 discovery cut-off date. BBI asserted that Travelers "failed to reasonably secure subpoenas for witnesses in a diligent manner" and urged the trial court "not [to] award such dilatory actions." (June 12, 2023 Pl.'s Reply at ¶ 5.)

{¶ 33} When Travelers secured affidavits from Hill and Singh, BBI changed its tune. In its Civ.R. 56(F) motion, BBI characterized Travelers's summary judgment motion as being "hastily filed," particularly when "[t]here [was] a pending motion to modify the case management schedule[.]" (Aug. 11, 2023 Pl.'s Civ.R. 56(F) Mot. at ¶ 1, 3.) BBI asserted "[t]here [was] no need [for the trial court] to rush to judgment" "prior to full discovery being completed." *Id.* at ¶ 1, 11.

{¶ 34} These contentions, however, obfuscated those facts unfavorable to BBI. Travelers did not file its motion for summary judgment hastily; it filed it on the dispositive motion deadline that the trial court had set—with the parties' agreement—approximately

---

[3] Pursuant to Loc.R. 26.02, "[t]he discovery cutoff date specified in the Case Schedule shall be the last date for any party to seek the involvement of the assigned judicial officer in the discovery process by way of motion seeking a ruling, an order, sanctions, or other Court action, absent extraordinary circumstances. Voluntary, mutual agreed-upon discovery, including perpetuation of trial testimony by video tape or otherwise, may continue after the discovery cutoff in a manner that does not delay any other event on the case schedule."

eight months prior. Although a motion to modify the case schedule was pending, BBI opposed that motion. And finally, deciding Travelers's summary judgment motion would not constitute a rush to judgment because the full discovery period, to which the parties had consented, had elapsed. Moreover, while BBI stated it needed to conduct three depositions in its Civ.R. 56(F) motion, it did not itself move to extend the discovery cut-off deadline.

{¶ 35} BBI offered one reason for its failure to depose witnesses during the discovery period: its attorney's busy schedule and staffing shortages. This reason, however, does not explain why BBI opposed Travelers's motion to extend the discovery cut-off date as late as June 12, 2023—with only 18 days left in the discovery period. If BBI had actually wanted to depose Hill and Singh, it should have agreed to an extension of the discovery cut-off date, instead of accusing Travelers of a lack of diligence.

{¶ 36} We suspect that strategy motivated BBI. If Travelers had succeeded in obtaining the deposition of Hill and/or Singh within the existing discovery period, BBI's attorney planned to attend the depositions and also depose the witnesses. In the meantime, BBI would oppose extending the discovery period in a bid to prevent Travelers from obtaining and relying on testimony from Hill and/or Singh. This strategy backfired on BBI when Travelers secured affidavits from Hill and Singh.

{¶ 37} BBI claims Travelers "spr[u]ng[]" Singh's affidavit on it "in bad faith," apparently because BBI expected Travelers to depose Singh. (Appellant's Brief at 32.) BBI, however, does not explain how obtaining and using a non-party's affidavit testimony, in lieu of deposition testimony, constitutes bad faith. In the absence of such an explanation, we fail to see how Travelers acted in bad faith. BBI cannot blame its discovery woes on Travelers.

{¶ 38} BBI also maintains that the trial court should have granted it a continuance pursuant to Civ.R. 56(F) because it had challenged the admissibility of the evidentiary materials Travelers attached to its motion for summary judgment. As we stated above, a trial court will grant relief under Civ.R. 56(F) if the moving party demonstrates sufficient reasons why it cannot present evidence to oppose summary judgment without a continuance. *Carte*, 2023-Ohio-4286, at ¶ 44 (10th Dist.); *Pickens*, 2014-Ohio-4825, at

¶ 18 (10th Dist.). Whether the materials supporting Travelers's summary judgment motion constitute admissible evidence is irrelevant to determining if BBI has met its burden.

{¶ 39} A trial court does not abuse its discretion in denying a Civ.R. 56(F) motion "where a party lacks diligence in conducting discovery and/or does not seek court involvement until after the discovery cut-off date." *Carte* at ¶ 47. BBI demonstrated a lack of diligence by making no attempt to conduct the depositions it needed to respond to summary judgment within the discovery period. Additionally, BBI opposed extending the case schedule deadlines, and it only reversed its position and sought court intervention *after* the discovery cut-off deadline passed. Accordingly, we conclude that the trial court did not abuse its discretion in refusing BBI a Civ.R. 56(F) continuance, and we overrule BBI's second assignment of error.

## C. ASSIGNMENT OF ERROR THREE—ADMISSIBILITY OF EVIDENCE SUPPORTING SUMMARY JUDGMENT

{¶ 40} By its third assignment of error, BBI argues that the trial court erred in considering the evidence Travelers submitted in conjunction with its motion for summary judgment. We disagree.

{¶ 41} BBI filed a motion to strike all the evidence Travelers cited in its motion for summary judgment. The trial court did not rule on BBI's motion to strike before granting Travelers's motion for summary judgment. An appellate court considers a trial court's failure to rule on a motion to strike evidence before granting summary judgment an implied denial of the motion to strike. *Childs v. Kroger Co.*, 2023-Ohio-2034, ¶ 50 (10th Dist.); *accord CitiMortgage, Inc. v. Guinther*, 2013-Ohio-4014, ¶ 24 (10th Dist.) (deeming denied a pending motion to strike evidence the opposing party relied upon in moving for summary judgment when the trial court granted the motion for summary judgment without ruling on the motion to strike); *Krukrubo v. Fifth Third Bank*, 2010-Ohio-1691, ¶ 19 (10th Dist.) (same). We thus will consider BBI's motion to strike denied by the trial court. Appellate courts review the denial of a motion to strike evidence for an abuse of discretion. *Childs* at ¶ 50; *Six v. Gahanna Trailer Servs.*, 2017-Ohio-7131, ¶ 18 (10th Dist.).

{¶ 42} First, BBI argues that the trial court erred by ignoring the deposition testimony of its expert, Dawn Hill. Before the trial court, BBI argued that Dawn Hill's testimony was inadmissible, and the trial court could not consider it. An "[a]ppellant

cannot change the theory of his case and present . . . new arguments for the first time on appeal." *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177 (1992). As BBI has reversed its position on Dawn Hill's testimony and now argues the opposite of what it argued before the trial court, we do not address this argument.

{¶ 43} Second, BBI argues that the trial court erred in considering Hill's and Singh's affidavits. Civ.R. 56(C) limits the material a trial court may consider when ruling on a motion for summary judgment to "pleadings, depositions, answers to interrogatories, written admissions, *affidavits*, transcripts of evidence, and written stipulations of fact, if any [that are] timely filed in the action." (Emphasis added.) Thus, generally, a trial court may consider affidavits in ruling on a motion for summary judgment.

{¶ 44} BBI, however, asserts that the trial court could not consider Singh's affidavit because Travelers originally scheduled a deposition for Singh before cancelling it and obtaining an affidavit from him, which it submitted with its motion for summary judgment. Again, we do not perceive any bad faith in Travelers's actions. The submittal of affidavit testimony, rather than deposition testimony, did not provide a basis to exclude Singh's affidavit from consideration.

{¶ 45} Next, BBI contends that Singh's affidavit is illegible. While the version of Singh's affidavit attached to Travelers's motion for summary judgment is slightly difficult to read due to its faint and blurry type, the affidavit is intelligible. Moreover, Travelers subsequently submitted to the trial court an undeniably legible copy of Singh's affidavit with its memorandum in opposition to BBI's motion to strike.

{¶ 46} Finally, BBI attacks the legitimacy of the version of Hill's affidavit attached to the motion for summary judgment because his signature was not notarized. Travelers, however, corrected this oversight by submitting a second, identical affidavit for Hill, which included a properly notarized signature. BBI never objected to the filing of Hill's corrected affidavit.

{¶ 47} Third, BBI argues that the trial court erred in considering documentary evidence attached to Singh's affidavit because that evidence constitutes inadmissible evidence. Specifically, BBI challenges three documents attached to Singh's affidavit: the uniform straight bill of lading, Summer Express's commercial auto and motor truck cargo insurance policy, and the Monroe, Louisiana police report issued regarding the burglary of

the tractor trailer. BBI claims that these documents are inadmissible because Singh did not authenticate them, and they constitute hearsay.

{¶ 48} Civ.R. 56(C) strictly limits the type of documentary evidence a party may use to support a motion for summary judgment. *State ex rel. Bradford v. Bowen*, 2022-Ohio-351, ¶ 11; *Wu v. Northeast Ohio Med. Univ.*, 2019-Ohio-2530, ¶ 25 (10th Dist.). To rely on documentary evidence not listed in Civ.R. 56(C), a party must incorporate that material by reference into an affidavit. *In re Estate of Beatley*, 2024-Ohio-5109, ¶ 46 (10th Dist.); *Wu* at ¶ 25; *accord Bradford* at ¶ 9, quoting *State ex rel. Parker v. Russo*, 2019-Ohio-4420, ¶ 10 ("When a court decides a summary-judgment motion, 'it is generally error * * * to rely on other types of evidence that ha[ve] not been authenticated by way of an attached affidavit.' "). To authenticate attached documentary evidence, an affidavit must state the attached documents are true copies. *Beatley* at ¶ 46; *Nationstar Mtge., L.L.C. v. Payne*, 2017-Ohio-513, ¶ 20 (10th Dist.); *accord State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467 (1981) ("The requirement of Civ.R. 56(E) that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions.").

{¶ 49} "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Generally, hearsay is inadmissible unless it falls within one of the exceptions to the rule against hearsay. *U.S. Bank Natl. Assn. v. George*, 2020-Ohio-6758, ¶ 15 (10th Dist.).

{¶ 50} BBI fails to explain why the documents it challenges are unauthenticated and constitute hearsay. Moreover, the trial court did not rely on any of the disputed documents in deciding Travelers's motion for summary judgment. Based on these two reasons, we normally would decline to review BBI's arguments. Nevertheless, because BBI relies heavily on the police report in arguing the trial court erred in granting summary judgment in Travelers's favor, we will consider the merits of BBI's arguments.

{¶ 51} Initially, we conclude that Travelers satisfied the Civ.R. 56(E) requirement to attach sworn copies of the disputed documents to Singh's affidavit. In his affidavit, Singh testified that "true and accurate" copies of the uniform straight bill of lading, the insurance

policy, and the police report were attached to his affidavit. (Singh Aff. at ¶ 4, 13, 17.) Singh thus authenticated the documents. *See Avita Health Sys. v. Robertson*, 2024-Ohio-1619, ¶ 23 (6th Dist.) (holding that the affiant properly authenticated the attached document under Civ.R. 56(E) when she averred the document was "a true and accurate copy").

{¶ 52} We surmise from the precedent BBI cites in its appellate briefing that BBI does not believe that Singh had sufficient personal knowledge to testify in his affidavit that the documents at issue were true and accurate copies. Singh's averment of personal knowledge, together with the information in the affidavit, demonstrates that Singh possessed the requisite personal knowledge.

{¶ 53} Affidavits must "be made on personal knowledge." Civ.R. 56(E). " 'Personal knowledge' is 'knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.' " *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 2002-Ohio-2220, ¶ 26, quoting *Black's Law Dictionary* (7th Ed. Rev. 1999). A statement by the affiant that the affidavit is made on personal knowledge satisfies Civ.R. 56(E) if the nature of the facts in the affidavit, combined with the identity of the affiant, creates a reasonable inference that the affiant has personal knowledge of the facts set forth in the affidavit. *Beatley*, 2024-Ohio-5109, at ¶ 55 (10th Dist.); *Truist Bank v. Eichenberger*, 2023-Ohio-779, ¶ 43 (10th Dist.).

{¶ 54} In his affidavit, Singh asserted personal knowledge of the facts he stated in his affidavit by representing, "This [a]ffidavit is based upon my personal knowledge and the business records of Summer Express, Inc.[,] of which I am the custodian." (Singh Aff. at ¶ 2.) Singh identified himself in his affidavit as "the owner, dispatcher and operator of Summer Express, Inc., a trucking company[.]" *Id.* at ¶ 3.

{¶ 55} The three documents at issue, which Singh authenticated as true and accurate copies, all related to Summer Express's business. The uniform straight bill of lading set forth contractual terms governing Summer Express's transportation of the frozen chicken. The insurance policy was Summer Express's policy. The police report documented the theft of frozen chicken from Hill's tractor trailer as he transported the chicken for Summer Express. Given Singh's role as owner-operator of Summer Express, it is reasonable to infer that Singh would have personal knowledge that the disputed documents—which all

concerned Summer Express's business—constituted true and accurate copies. Singh, therefore, could authenticate the documents.

{¶ 56} In addition to asserting the disputed documents were unauthenticated, BBI also claims they constitute hearsay. We are not persuaded by this argument.

{¶ 57} Both the uniform straight bill of lading and the insurance policy are contractual documents and, thus, not hearsay. Hearsay is limited to statements that are (1) made by a declarant who is not on the witness stand at the time of the statement and (2) offered into evidence to prove the truth of the matter asserted. Evid.R. 801(C). " 'If a statement is not offered to prove its truth but is offered for some other reason . . . , it is not hearsay.' " *State v. Smith*, 2017-Ohio-9283, ¶ 25 (10th Dist.), quoting 1980 Staff Note to Evid.R. 801(C). Consequently, " '[w]ords constituting conduct are not hearsay, e.g., words of a contract[.]' " (Emphasis added in *Smith* omitted.) *Id.*, quoting 1980 Staff Note to Evid.R. 801(C). Words constituting conduct, sometimes called "verbal acts," are excluded from hearsay "because they are not assertions and not adduced to prove the truth of the matter." *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992); *accord Leeseberg & Valentine, L.P.A. v. Willman*, 2024-Ohio-4879, ¶ 55 (10th Dist.), quoting *Wade v. Communications Workers of Am.*, 1985 Ohio App. LEXIS 7121, *11 (1st Dist. Sept. 24, 1985) (" '[S]ome utterances do not constitute assertions but, instead, constitute what has been referred to as verbal acts, being the uttering of words which have independent legal significance under substantive law, such as words constituting the offer and acceptance of a contract.' "). "A contract . . . is a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay." *Id.*; *accord Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) (holding that "[a] contract is a verbal act" with "legal reality independent of the truth of any statement contained in it" and, thus, "cannot be the subject of a valid hearsay objection"); *George*, 2020-Ohio-6758, at ¶ 16 (10th Dist.), quoting *Christiana Trust v. Barth*, 2017-Ohio-6924, ¶ 10 (9th Dist.) (holding that a promissory note, mortgage, and modification agreement "were not inadmissible hearsay because they 'were not offered to prove the truth of the matters asserted therein; rather, they were offered to prove that persons engaged in transactions creating legal rights and responsibilities' "). As contractual documents, the uniform straight bill of lading and the insurance policy are verbal acts and do not constitute hearsay.

{¶ 58} Police reports, like the one issued by the Monroe, Louisiana Police Department regarding the burglary of the tractor trailer, are generally hearsay, unless they meet one of the hearsay exceptions. *Amoako-Okyere v. Church of the Messiah United Methodist Church*, 2015-Ohio-3841, ¶ 50 (10th Dist.). The most commonly applying exception is Evid.R. 803(8), which allows into evidence:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

Thus, in civil cases, portions of a police report that contain "matters observed pursuant to [a] duty imposed by law as to which matters there was a duty to report" are admissible in evidence. Evid.R. 803(8)(b). These admissible portions include firsthand observations of the police officer making the report and the observations of a person with a duty to report to a public official. *In re P.S.*, 2026-Ohio-403, ¶ 79 (3d Dist.); *Amoako-Okyere* at ¶ 50; *Wise v. Mayer*, 2006-Ohio-4654, ¶ 37 (2d Dist.). However, statements in a police report made by a private citizen, who does not have a duty to report, are inadmissible hearsay. *P.S.* at ¶ 79; *Amoako-Okyere* at ¶ 50.

{¶ 59} The police report at issue here contained hearsay; namely, the statements of Hill as relayed to the police officer taking the report about the circumstances surrounding the theft of the frozen chicken. The trial court, however, did not rely on those statements in its decision. Rather, the trial court drew upon Hill's affidavit testimony when recounting the facts of this case in its decision. Accordingly, the trial court did not err in considering inadmissible evidence when deciding Travelers's motion for summary judgment.

{¶ 60} Fourth, BBI argues that the trial court erred in considering a letter from Standard Meat dated June 2, 2021. Although Travelers referred to this letter in its motion for summary judgment, Travelers failed to attach the letter to its motion. The trial court, therefore, could not have considered it. Consequently, the trial court could not have erred as alleged.

{¶ 61} Fifth, BBI argues that the trial court erred in considering the commercial inland marine insurance policy that Travelers issued it because no affidavit authenticated

it. As we explained above, Travelers submitted an affidavit from Kupec, an assistant vice president of document management for Travelers Indemnity Company, to authenticate the commercial inland marine insurance policy Travelers provided to BBI for the period of October 25, 2020 through October 25, 2021. Kupec testified that the insurance policy attached to his affidavit was "a true and accurate copy" of BBI's insurance policy. (Kupec Aff. at ¶ 5.) BBI did not object to Kupec's affidavit. Because Kupec's affidavit authenticated the insurance policy, the trial court did not err in considering the policy on summary judgment.

{¶ 62} Sixth, BBI argues that the trial court erred in relying on Renwick's inadmissible expert opinion contained in the claim denial letter she wrote. In her affidavit, which Travelers attached to its motion for summary judgment, Renwick testified that the claim denial letter attached to BBI's complaint was "a true and accurate copy" of Travelers's decision on BBI's insurance claim. (Renwick Aff. at ¶ 8.) Although the letter contains Travelers's reasoning for its denial of BBI's claim, the trial court did not rely on that reasoning when granting Travelers summary judgment. The trial court used different policy language and different reasoning when determining that the policy did not cover the property at issue in this case. Because the trial court did not consider Renwick's opinion, the trial court did not err as BBI asserts.

{¶ 63} In sum, we conclude that the trial court did not err in impliedly denying BBI's motion to strike nor in considering the evidence attached to Travelers's motion for summary judgment. Accordingly, we overrule BBI's third assignment of error.

## D. ASSIGNMENT OF ERROR FOUR—GRANT OF SUMMARY JUDGMENT

{¶ 64} By its fourth assignment of error, BBI argues that the trial court erred in granting Travelers summary judgment on BBI's claims for breach of contract and bad faith. We disagree.

{¶ 65} A trial court must grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *A.J.R. v. Lute*, 2020-Ohio-5168, ¶ 15;

*McConnell v. Dudley*, 2019-Ohio-4740, ¶ 18.  Appellate review of a trial court's ruling on a motion for summary judgment is de novo.  *A.J.R.* at ¶ 15.  This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.,* 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 66} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Dresher v. Burt*, 1996-Ohio-107, ¶ 18.  The moving party does not discharge this initial burden under Civ.R. 56 by simply making conclusory allegations.  *Id.*  Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Id.*  If the moving party meets its burden, then the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. *Id.*; Civ.R. 56(E).  If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.  *Id.*

{¶ 67} In this case, BBI did not oppose Travelers's motion for summary judgment on the merits but, instead, raises arguments for the first time on appeal regarding whether Travelers met its initial burden under Civ.R. 56.  A party who fails to raise an argument in the trial court waives or forfeits the right to raise that argument on appeal.  *West v. Bode*, 2020-Ohio-5473, ¶ 43; *Robol v. Columbus*, 2025-Ohio-973, ¶ 64 (10th Dist.); *Deutsche Bank Natl. Trust Co. v. Stone*, 2021-Ohio-3007, ¶ 12 (10th Dist.).  Although we review a trial court's decision granting summary judgment under a de novo standard of review, that standard does not supersede the settled practice of not addressing arguments raised for the first time on appeal.  *Davis v. Diley Ridge Med. Ctr.*, 2025-Ohio-1940, ¶ 9 (10th Dist.); *Robol* at ¶ 64; *Stone* at ¶ 12.  Parties do not get a second chance on appeal to raise arguments that they should have raised below.  *Tchankpa v. Ascena Retail Group, Inc.*, 2020-Ohio-3291, ¶ 20 (10th Dist.).  Therefore, we do not address any argument BBI raises for the first time on appeal in response to the motion for summary judgment, "except insofar as those

arguments point to issues of material fact in [Travelers's] motion and supporting evidentiary materials."[4] *Stone* at ¶ 12.

{¶ 68} Interpreted broadly, the cargo and logistics pak portion of the commercial inland marine insurance policy obligated Travelers to cover loss or damage to "[c]overed [p]roperty" caused by a "[c]overed [c]ause of [l]oss." (Def.'s Ex. E at 19, July 28, 2023 Def.'s Mot. for Summ. Jgmt.) In its motion for summary judgment, Travelers argued that an exclusion to the definition of covered property meant that it did not owe BBI under the policy for the loss and/or damage to the frozen chicken. The policy excluded from the definition of covered property:

> Property in or on a vehicle, trailer or container at any location for more than twenty-four hours from the time it arrived at that location, including [p]roperty in or on a vehicle, trailer or container if we are unable to determine the time of loss necessary to this clause. This exclusion does not apply to [c]overed [p]roperty located at a "[t]erminal" or "[f]acility" listed in the [d]eclarations.

*Id.* at 42.

{¶ 69} An insurance policy is a contract that a court interprets as a matter of law. *Krewina v. United Specialty Ins. Co.*, 2023-Ohio-2343, ¶ 17. A court will interpret an exclusion in an insurance policy as applying only to that which the language clearly intends to exclude. *World Harvest Church v. Grange Mut. Cas. Co.*, 2016-Ohio-2913, ¶ 29; *Sauer v. Crews*, 2014-Ohio-3655, ¶ 11. Courts construe ambiguity in policy language against the insurer and in favor of the insured, particularly when the ambiguity exists in a provision that purports to limit or qualify coverage. *World Harvest Church* at ¶ 29.

{¶ 70} Only one other court has interpreted the language of the cargo theft exclusion. That court concluded, "Based on the plain meaning of the [p]olicy, there was no coverage for lost property (1) if the property remained at any location for more than 24 hours at the time of the loss or (2) if the property remained at any location for more than 24 hours, and Travelers was unable to determine the time of the loss." *Big Bear Tracking*

---

[4] Consequently, we do not address BBI's argument that Travelers waived the right to deny it coverage due to the representations Travelers made in the claim denial letter. We will note, however, that the claim denial letter provides that "[t]his letter does not, nor is it intended to, waive any of the rights Travelers . . . may have under the terms of this insurance policy or at law. . . . We expressly do not waive our right to deny coverage/liability for any other valid reason." (Pl.'s Ex. C. at 2, June 21, 2022 Compl.)

*Corp. v. Travelers Property Cas. Co.*, 2020 U.S. Dist. LEXIS 247759, *9 (C.D.Cal. Nov. 24, 2020). Surprisingly, in this case, Travelers did not interpret the cargo theft exclusion as the court did in *Big Bear*. Travelers informed the trial court that the cargo theft exclusion provided "that property in a trailer or container left for more than 24 hours at a location which is not a terminal or facility listed in the Declarations is not covered property if Travelers is unable to determine the time of the loss." (July 28, 2023 Def.'s Mot. for Summ. Jgmt. at 7.) This interpretation of the exclusion is more favorable to the insured, as it hinges application of the exclusion on proof of both (1) a hiatus of over 24 hours during the transport of cargo in a non-terminal or non-facility location *and* (2) an unknown time of loss. In other words, the exclusion would *not* apply if Travelers proved only the 24-hour hiatus. For purposes of this appeal, we will adopt Travelers's interpretation of the cargo theft exclusion as it favors the insured, BBI.

{¶ 71} BBI does not contest that the evidence establishes the frozen chicken remained for over 24 hours in a location that was neither a terminal nor a facility. According to Hill's affidavit testimony, Hill parked his tractor trailer, which contained the frozen chicken, on a residential street in Monroe, Louisiana for approximately four days. BBI points to no evidence contradicting Hill's affidavit testimony.

{¶ 72} BBI, however, maintains that a question of fact exists as to whether the time of loss is known. Travelers contends that it could not determine the time of loss because, as Hill's affidavit states, Hill did not discover that someone had broken into the trailer and stolen some chicken until February 17, 2021, approximately four days after he parked the tractor trailer on his street. The loss, therefore, could have occurred anytime over the course of the intervening four days. To rebut Hill's affidavit testimony, BBI relies on the Monroe, Louisiana police report, which provides, "Hill stated that sometime during the nigh[t] an unk[nown] suspect[] cut the seals off the back door of his eighteen[-]wheeler trailer and took 15-20 pounds of chicken." (Ex. 3 at 2, Singh Aff., Police Department Summary.) BBI argues that, based on Hill's statement to the police, the loss had to occur during the night of February 16 and 17, 2021.

{¶ 73} We reject BBI's argument. As BBI itself asserted in opposing summary judgment, Hill's statement to the police is inadmissible hearsay. BBI, therefore, cannot rely upon it to create an issue of fact. We also note that, during oral argument before this court,

BBI conceded that the record contains no evidence regarding the actual time of loss, and no one knows when the loss at issue occurred.

{¶ 74}   Because the undisputed, admissible evidence in the record establishes the cargo theft exclusion applies, the frozen chicken is not covered property under the insurance policy.  The trial court, therefore, did not err in granting Travelers summary judgment on BBI's claim for breach of contract.

{¶ 75} BBI also argues that genuine issues of material fact preclude summary judgment on its claim for bad faith.  BBI, however, does not identify those genuine issues of material fact.  Moreover, if an insurer does not breach the insurance policy when denying coverage, then an insured cannot maintain a claim for bad faith.  *Washington v. Evans*, 2021-Ohio-587, ¶ 34 (10th Dist.).  We, consequently, conclude that the trial court did not err in granting Travelers summary judgment on BBI's claim for bad faith.  As neither BBI's claim for breach of contract nor its claim for bad faith survive summary judgment, we overrule BBI's fourth assignment of error.

## IV.  CONCLUSION

{¶ 76}  For the foregoing reasons, we overrule BBI's four assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS, P.J. and BEATTY BLUNT, J., concur.